Decided 11 January, 1904.

**DANIELSON v. ROBERTS.**

[74 Pac. 913.]

RIGHT OF FINDER OF LOST PROPERTY TO ITS POSSESSION.

Persons who find lost property, or property for which there is no known owner, are entitled to the possession thereof for the purpose of returning it to the true owner or disposing of it according to law.

From Jackson: HIERO K. HANNA, Judge.

Action by W. O. and C. P. Danielson, through their guardian *ad litem,* against W. B. Roberts, and others, in trover for the conversion of sundry gold coins, found by the plaintiffs in an old chicken house, and delivered to defendants. Plaintiffs appeal from an order granting an involuntary nonsuit.              REVERSED.

For appellants there was an oral argument by *Mr. John A. Jeffrey,* with a brief over the names of *W. Estill Phipps* and *J. A. Jeffrey* to this effect:

I. Under the law governing treasure trove the discoverer of buried treasure is the owner thereof against all persons except the original owner, especially where the subject is not regulated by statute: B. & C. Comp. §§ 3887–3905; 2 Kent, Com. (14 ed.) 350, 357–360; 19 Am. & Eng. Ency. Law (2 ed.), 580; 26 Am. & Eng. Ency. Law (1 ed.), 535, 536; *Sovern* v. *Yoran,* 16 Or. 269 (8 Am. St. Rep. 293, 20

Pac. 100); *Warren* v. *Ulrich*, 130 Pa. St. 414 (18 Atl. 618); *Durfee* v. *Jones*, 11 R. I. 588 (23 Am. Rep. 528).

II. Such treasure is not "lost property," but is governed partially by the same rule, as the two subjects seem to be merged into each other in the United States: 26 Am. & Eng. Ency. Law (1 ed.), 535, 536; *Sovern* v. *Yoran*, 16 Or. 269 (8 Am. St. Rep. 293, 20 Pac. 100.)

III. An employer cannot claim title to property discovered by his employé where it was found independently of his work. The place of the finding is immaterial: *Burns* v. *Clark*, 133 Cal. 634 (66 Pac. 12); *Bowen* v. *Sullivan*, 62 Ind. 281 (30 Am. Rep. 172); *Tatum* v. *Sharpless*, 6 Phila. (Pa.) 18, 20; *Ellery* v. *Cunningham*, 1 Metc. (42 Mass.) 112; *Hamaker* v. *Blanchard*, 90 Pa. St. 377 (35 Am. Rep. 664).

For respondents there was an oral argument by *Mr. William I. Vawter* and *Mr. James R. Neil*, with a brief to this effect:

(1) Goods are lost, in the legal sense of the word, only when the possession has been casually and involuntarily parted with, as in the case of an article accidently dropped by the owner. If the owner of an article purposely lays it down, intending to take it up again immediately, and he forgets it and leaves it where it is laid (*e. g.* a purse left on the counter of a shop), or if he lays it away and then forgets where he put it, such article is not lost, but is merely mislaid, and therefore the incidents of lost goods do not attach: 19 Am. & Eng. Ency. Law (2 ed.), 579; *Sovern* v. *Yoran*, 16 Or. 269 (8 Am. St. Rep. 293, 20 Pac. 100); *Hamaker* v. *Blanchard*, 90 Pa. St. 379 (35 Am. Rep. 664); *McAvoy* v. *Medina*, 93 Mass. (11 Allen) 548 (87 Am. Dec. 733).

(2) Money or goods found, which have been hidden in the earth by the owner thereof for safe keeping, is not property which the owner has involuntarily parted with the possession of, and is not lost property: *Sovern* v. *Yoran*, 16 Or. 269 (8 Am. St. Rep. 293, 20 Pac. 100); *Lawrence* v.

*State*, 20 Tenn. (1 Humph.) 228 (34 Am. Dec. 644); *Kincaid*
v. *Eaton*, 98 Mass. 139 (93 Am. Dec. 142); *Livermore* v.
*White*, 74 Me. 452 (43 Am. Rep. 600).

Mr. Justice Bean delivered the opinion.

This is an action of trover to recover for the alleged con-
version of money. The plaintiffs aver, in substance, that
in March, 1894, while engaged at the request of the de-
fendants in cleaning out and removing the loose dirt and
débris from an old building situated on premises occupied
by the defendants, they discovered a tin vessel, rusty, and
worn with age, which contained the sum of $7,000 in gold
coin of the United States; that the defendants wrongfully
took and received the money from the plaintiffs, and have
ever since wrongfully and unlawfully detained the same,
to their damage in the sum of $7,000; that the building
in which the money was found had stood on the premises
for more than forty years, and during that time had been
in the possession and control of many owners and tenants;
that the dirt and débris which the plaintiffs were engaged
in cleaning out and removing at the time the money was
discovered had been undisturbed for many years; that
the vessel which contained the money was so worn and
destroyed by time and the elements that it was difficult to
ascertain from an inspection of it what kind of a vessel it
had been, and plaintiffs could hardly hold it together until
it and its contents were taken by the defendants; that the
owner of the vessel and the money contained therein "has
long since died, and the said vessel and the said sum of
$7,000 contained therein were prior to said time lost, and
their whereabouts unknown to any person or persons
whatever"; that plaintiffs are the discoverers of the money,
and are now, and ever since the —— day of March, 1894,
have been, the owners thereof, and entitled to its imme-
diate possession; that defendants wrongfully and unlaw-

fully fail, neglect, and refuse to repay the same to the plaintiffs, etc. The answer denies all the material allegations of the complaint, except the discovery by the plaintiffs of the treasure, and that they were working for the defendants at the time, and alleges affirmatively that the money discovered did not exceed the sum of $1,000, and was the property of one of the defendants, who had voluntarily deposited it in the place where discovered for safe keeping, and at no time had abandoned or lost it. The reply denies the material allegations of the answer. Upon the issues joined the cause came on for trial before a jury. After the plaintiffs' testimony was all in, the defendants moved for and were allowed a nonsuit.

The evidence in the bill of exceptions tends to show that in 1894 the plaintiffs, who were then aged about eight and ten years, respectively, were employed by the defendants to clean out an old henhouse situated on premises then occupied by defendants, but which had previously been owned and in the possession of numerous other persons ; that while so engaged they dug up an old rust-eaten half-gallon tin can containing a number of musty and partially decayed tobacco sacks filled with gold coin, which they delivered to the defendants. W. O. Danielson, the elder of the two boys, thus describes the finding of the money and its delivery to the defendants : "We hauled several loads from the front end of the building. I was in the back end of the building, spading through the trash, and the point of the shovel struck something hard. I shoveled the trash away, and got the can on my spade, and was going to throw it in the sled. It was too heavy, so I dragged it out toward me a foot or so, and told my brother the can must be full of rocks. So I tried to take the lid off with my fingers. It was rusty and old, and I could not get it off, so I took the pick and chopped through the lid, and when I pulled it out the lid came with it. * *

In doing so I cut two of the sacks—tobacco sacks—containing fives and twenties. So we looked through all the sacks, which were gold. * * My brother says, 'Let's take it over home.' I says, 'No, * * let's take it up and show Dee Roberts.' So we packed it up on the spade together. * * We packed it up to the porch steps, and Dee came out and says, 'What you got, boys?' We says, 'A can of gold.' 'Where did you get it?' 'Out in the henhouse.' So Mary Roberts, Dee's wife, and O'Neil came to the door, and said, 'Let's have it,' so we gave it to them. They walked inside and closed the door in our face, and we went back to work to finish up our job. About half an hour after, Dee called us out and says: 'Here's five cents, boys. We put the money there some time ago, and were going to buy something with it. Don't say anything about it, and the Lord will bless you.' We asked him how much was in the can. He said, 'Over seven thousand dollars.'" The witness further testified that the can containing the money was old and rusty, and almost ready to fall to pieces; that it was buried in the earth under the débris and dirt in the henhouse, three or four inches below the surface, and that the ground around it was quite solid, as if it had not been disturbed recently; that the building in which it was found was old, and looked as if it had not been cleaned out for some time, and the dirt and débris over the can did not appear to have been recently disturbed. The plaintiff C. P. Danielson testified to substantially the same state of facts.

The motion for nonsuit was sustained on the ground, as we understand it, that the evidence for the plaintiffs showed that the money in question had been intentionally deposited by some one where found, and therefore the plaintiffs could not invoke the rule that the finder of lost property is entitled to its possession against all the world except its true owner. Ever since the early

case of *Armory* v. *Delamirie*, 1 Strange, 504, where it was
held that the finder of a jewel might maintain trover for
the conversion thereof by a wrongdoer, the right of the
finder of lost property to retain it against all persons ex-
cept the true owner has been recognized.   In that case a
chimney sweeper's boy found a jewel, and carried it to a
goldsmith to ascertain what it was.   The goldsmith refused
to return it, and it was held that the boy might maintain
trover on the ground that by the finding he had acquired
such a property in the jewel as would entitle him to keep
it against all persons but the rightful owner.   This case
has been uniformly followed in England and America,
and the law upon this point is well settled: *Sovern* v. *Yoran*,
16 Or. 269 (20 Pac. 100, 8 Am. St. Rep. 293); 19 Am. &
Eng. Ency. Law (2 ed.), 579.   But it is argued that prop-
erty is lost in the legal sense of that word only when the
possession has been casually and involuntarily parted
with, and not when the owner purposely and voluntarily
places or deposits it in a certain place for safe-keeping,
although he may thereafter forget it, and leave it where
deposited, or may die without disclosing to any one the
place of deposit.   This seems to have been the view taken by
Mr. Justice LORD in *Sovern* v. *Yoran*, where money was
found hidden under the floor of a barn.   It had evidently,
as in this case, been deposited there by some one, and the
question for decision was whether the defendant, who had
treated the money as lost property, and disposed of it as
provided in the statute, was guilty of a conversion, and
liable to the true owner therefor.   It is said in the opinion
that until the owner was discovered, the money was in the
nature of treasure trove, and could not be treated as lost
property, within the meaning of the statute.   At common
law a distinction was made between lost property and treas-
ure trove.   Lost property was such as was found on the sur-

face of the earth, and with which the owner had involuntarily parted. The presumption arising from the place of finding was that the owner had intended to abandon his property, and that it had gone back to the original stock, and therefore belonged to the finder or first taker until the owner appeared and showed that its losing was accidental, or without an intention to abandon the property. Treasure trove, on the other hand, was money or coin found hidden or secreted in the earth or other private place, the owner being unknown. It originally belonged to the finder if the owner was not discovered; but Blackstone says it was afterward judged expedient, for the purposes of State, and particularly for the coinage, that it should go to the king; and so the rule was promulgated that property found on the surface of the earth belonged to the finder until the owner appeared, but that found hidden in the earth belonged to the king: 1 Bl. Com. *295.

In this country the law relating to treasure trove has generally been merged into the law of the finder of lost property, and it is said that the question as to whether the English law of treasure trove obtains in any State has never been decided in America: 2 Kent, *357; 26 Am. & Eng. Ency. Law (1 ed.), 538. But at the present stage of the controversy it is immaterial whether the money discovered by plaintiffs was technically lost property or treasure trove, or, if treasure trove, whether it belongs to the State or to the finder, or should be disposed of as lost property if no owner is discovered. In either event the plaintiffs are entitled to the possession of the money as against the defendants, unless the latter can show a better title. The reason of the rule giving the finder of lost property the right to retain it against all persons except the true owner applies with equal force and reason to money found hidden or secreted in the earth as to property found on the surface. It is thus stated in *Armory* v. *Delamirie*. 1 Smith's

Lead. Cas. pt. 1, *475: "Every one on whom the possession of chattels personal is cast by the law, by the act of the parties, or through the force of circumstances is charged with the duty of taking reasonable care, and answerable if he does not to the owner, and may consequently recover for any wrongful act by which the property is impaired, in the capacity of trustee, if in no other character." The money for which this action is brought came lawfully into the possession of the plaintiffs. The circumstances under which it was discovered, the condition of the vessel in which it was contained, and the place of deposit, as shown by the plaintiffs' testimony, all tend with more or less force to indicate that it had been buried for some considerable time, and that the owner was probably dead or unknown. The plaintiffs, having thus come into its possession, were charged with the duty of holding it for the true owner, if he could be ascertained, and, if not, of making such disposition thereof as the law required. The possession of the money was cast upon them by the force of circumstances. They were consequently under the obligation of taking reasonable care of it until it could be returned to the true owner, or otherwise disposed of, and they may therefore maintain such actions or proceedings as may be necessary to enable them to retain or recover its possession. The fact that the money was found on the premises of the defendants, or that the plaintiffs were in their service at the time, can in no way affect the plaintiffs' right to possession, or their duty in reference to the lost treasure: *Hamaker* v. *Blanchard*, 90 Pa. 377 (35 Am. Rep. 664); *Bowen* v. *Sullivan*, 62 Ind. 281 (30 Am. Rep. 172); *Tatum* v. *Sharpless*, 6 Phila. 18; *Durfee* v. *Jones*, 11 R. I. 588 (23 Am. Rep. 528); *Bridges* v. *Hawkesworth*, 21 L. J. Q. B. 75. We are of the opinion, therefore, that the case should have gone to the jury, and, unless it should appear that the defendants are the owners of the money, they

must return the possession thereof to the plaintiffs, in order that they may make lawful disposition thereof. Judgment reversed and new trial ordered.    REVERSED.