Argued February 24, decided March 14, 1911.

## ROBERSON v. ELLIS.

[114 Pac. 100.]

EVIDENCE—HEARSAY.

1. Where one sued for money deposited with him by the finder defended on the ground of payment to the owner, declarations by the claimed owner tending to show that the money was not his were not inadmissible as hearsay, because made in defendant's absence.

APPEAL AND ERROR—REVIEW—ORDER OF PROOF—JUDICIAL DISCRETION.

2. The order of proof is within the discretion of the trial court, exercise of which will be disturbed only for abuse.

FINDING LOST GOODS—BURDEN OF PROOF—TITLE.

3. In trover by a finder of money against his bailee, he was bound to allege and prove some ownership in himself.

FINDING LOST GOODS—OWNERSHIP OF PROPERTY—PLEADING AND PROOF.

4. An allegation of ownership of money found admits proof of general or special ownership.

ABANDONMENT—OWNERSHIP OF PROPERTY FOUND.

5. Property purposely abandoned by the original owner is restored to the common stock, and becomes the property of him who first discovers and takes it into his possession.

FINDING LOST GOODS—RIGHTS OF FINDER.

6. Lost property becomes the property of the finder, as against every one except the true owner.

ABANDONMENT—EVIDENCE—SUFFICIENCY.

7. Evidence, in an action to recover money deposited by the finder, *held* to warrant a finding that it was abandoned, making an instruction on abandonment proper.

FINDING LOST GOODS—GOODS FOUND—RIGHT TO.

8. One employed to remove goods from a warehouse was entitled to money found by him, not belonging to the employer, as against the employer.

FINDING LOST GOODS—RIGHT TO.

9. That a bailee of money was a tenant of the warehouse in which it was found by his employee does not necessarily show title in the bailee as against the employee.

FINDING LOST GOODS—TREASURE TROVE—FINDER'S TITLE.

10. Present property of treasure trove is in the finder, as against every one but the true owner, if he is unknown, regardless of where it was found, if it is secreted in the earth or other private place.

FINDING LOST GOODS—RIGHT TO GOODS—JURY QUESTION.

11. In an action by the finder of lost money to recover it from his bailee, whether the money was treasure trove *held* under the evidence a jury question.

From Columbia:    JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by R. H. Roberson against Mike Ellis. The facts as disclosed at the trial, are as follows:

In this case the plaintiff alleges "that on or about the 14th day of May, 1907, while the plaintiff was engaged in removing goods, merchandise, and old rubbish from a certain old warehouse in Rainier, Oregon, he discovered and found in said warehouse 22 gold coins of money of the coinage of the United States of America of the value of $10 each, which money had been lost prior hereto; that the owner and loser of said money prior to the date of the finding by plaintiff was at said date of finding, at all times prior thereto, and at all times since has been, unknown to the plaintiff and all other persons whomsoever; that the plaintiff was and is the finder and discoverer of said money, and he is now and ever since the date of finding aforesaid has been the owner thereof as such finder and discoverer, and entitled to its immediate possession; that on the same day of finding of said money

aforesaid, the defendant took and received from plaintiff
21 of said gold coins of money of the value of $210 upon
the express understanding and agreement and not other-
wise, that defendant would keep it for plaintiff until
called for by him, unless the loser and original and true
owner thereof should before such call be found and claim
said money; that the said loser and original or true
owner of said money has never at any time been found
or known by either the plaintiff or defendant or any other
person or persons whatsoever." He further alleges in
substance a demand upon the defendant for the return
and repayment of the money, the defendant's refusal, and
the defendant's continual wrongful and unlawful deten-
tion of the money from the plaintiff in the sum of $210.

The defendant denies the finding or loss of the money;
denies that the owner was unknown; that the plaintiff is
the finder, discoverer, or owner, or entitled to the posses-
sion, of the money and denies that he agreed to keep the
money for the plaintiff. For affirmative defense he states
that prior to the alleged finding one Tom Ellis was the
owner and in the actual possession of the money in dis-
pute, "and for the purpose of safe-keeping and preserving
the same deposited and concealed the same in the ware-
house of this defendant at Rainier, Oregon, to which
warehouse no one other than said Tom Ellis and this
defendant had access; that a short time prior to May 14,
1907, the said Tom Ellis departed from Rainier, and
Columbia County, Oregon, on a visit, and before doing so
appointed and named this defendant as his agent and
representative to care for and have the custody and con-
trol of all his property in Columbia County, Oregon;
that during the absence from Rainier of said Ellis, the
defendant, desiring to remove from said warehouse cer-
tain goods, wares, and merchandise he had on storage
there, hired and employed the plaintiff to remove the
same, and gave the plaintiff access to said warehouse for

that purpose; that during said employment the plaintiff took from its place of deposit in said warehouse the said gold coins and delivered 21 thereof to defendant; that at said time defendant did not know who was the owner thereof, but, as the owner of the warehouse where said coins had been deposited and left, defendant retained the said coins for the benefit of the owner thereof; that thereafter, upon the return of said Tom Ellis to Rainier, defendant discovered and learned that he, the said Tom Ellis, was the owner of said coins and defendant paid and delivered the same to said Tom Ellis, who has ever since retained the same." The reply denies the new matter in the answer. As the result of a jury trial there was a verdict and judgment for plaintiff for the full amount claimed, from which judgment the defendant appeals.

AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Dan J. Malarkey* and *Mr. Ephraim B. Seabrook.*

For respondent there was a brief and an oral argument by *Mr. William H. Powell.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first assignment of error relied upon by the defendant is based upon the ruling of the court in admitting the testimony of the plaintiff about a conversation which he claimed he had with Tom Ellis, in substance as follows: After the return of Tom Ellis from a trip away from home, the witness asked him if he had ever lost any money, and he said that he had not. Witness then asked him if he had ever put any money away. He said he had not, and asked: "Why?" Plaintiff told him he had found some money. Ellis then asked him how much he had found, and where. Plaintiff did not state the amount, but said he had found it in the warehouse. Ellis asked him how much he found, five or ten dollars.

Plaintiff answered, "Yes, I found that much all right enough; and he said, 'twenty dollars?' and I said there was $20, all right enough; and tnat's all I said, and turned and walked away." It is claimed by the appellant that because he was not present at that conversation it was purely hearsay, and on that ground was not admissible against him. This contention leaves out of consideration the defense pleaded here, which is, in substance, that the defendant took the money from the plaintiff and retained it for the benefit of the owner, all because the money was found in the defendant's warehouse. The defendant thus assumed to act as the agent or bailee of Tom Ellis, who he claims to have been the owner of the money. So far as the conversation with Tom Ellis as detailed by the witness goes, it tends to show an admission by Tom Ellis that he was not the owner of the money in question. If Tom Ellis was the principal and the defendant his agent for the purpose of holding the money for the account of Tom Ellis (which is the substance of the affirmative defense), the admission of the principal would certainly bind the agent, and the doctrine of hearsay would not apply.

2. The only objection that can be urged against the admission of this evidence is that it was properly rebuttal testimony, which should be heard only in case the defendant entered upon his defense. This objection, however, involves only the order of proof, which is within the discretion of the court, and in the absence of an abuse of discretion this court will not disturb the ruling of the court below.

3. The appellant further complains that the court instructed the jury about abandoned property, as well as about lost property, and he contends that, because the complaint alleges that the money was lost, the jury is precluded from the consideration of abandoned property. However, it must be remembered that the gist of this

action is in trover to recover damages for the detention of the money in question in breach of the contract of bailment between the parties. To sustain the action it was incumbent upon the plaintiff to allege and prove some property in the money.

4. In support of the allegation that he was the owner of the coin, he would be at liberty to prove either a general property or a special property within the meaning of the rule laid down in *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564). In that case it was held under an allegation of general ownership the plaintiff was entitled to show that he had a chattel mortgage upon the property in question, the condition of which was broken in that the debt for which it was security was overdue and unpaid. The rule is also laid down in general terms in *Weeks* v. *Hackett,* 104 Me. 264 (71 Atl. 858: 19 L. R. A. (N. S.) 1201: 129 Am. St. Rep. 390). The history of how the plaintiff came to be the owner of the money is evidential only, or a matter of testimony, the allegations concerning which might have been stricken out as redundant or as pleading evidence.

5. In this action it cannot concern the defendant whether the plaintiff proved a qualified property by means of the rules relating to treasure trove or lost property, which the modern authorities make practically synonymous, or whether he makes out an absolute ownership through the discovery of abandoned property. If the property is purposely abandoned by the original owner thereof, it is restored to the common stock, and afterwards becomes the property of the one who first discovers and takes it into his possession.

6. If it is really lost property which has become separated from the possession of the true owner without his knowledge, or if it is treasure trove where money is secreted and found by another, it becomes the property of the finder, as against every one except the true owner.

For the purposes of this case, the result would be the same, whether the plaintiff proved his allegation of ownership by one means or the other.

7. There are circumstances in the case from which the jury would be authorized to conclude that the property had been abandoned. The defendant alleges that he and his brother were the only ones who had access to the warehouse in question, and there is testimony tending to show that both disclaimed any interest in the money in question. There is other testimony tending to show that many people stored furniture and household goods in the warehouse, and that roving steamboat hands and fishermen had access to it. The jury might have concluded that some of these transient people had left the money there designedly, and having gone away to sea or to some distant part of this or another country had found it inconvenient to return for the money, and so had abandoned it. It is possible to abandon property anywhere, even in a warehouse, and it is only when nothing else is shown except the place of finding, that attention must be given to the distinction of its being found upon the ground, instead of in some place of deposit. Hence there was testimony from which the jury might have concluded that the property was abandoned, and so to instruct upon that question was not error.

8. It is also urged by the appellant that the court below erred in overruling his motion for nonsuit at the close of the plaintiff's case, on the ground that the plaintiff had not proved a cause sufficient to be submitted to the jury. The question is, then, was there any evidence in the case which the jury had a right to consider? The defendant contends that the plaintiff was his employee, and that his taking possession of the money was in law and effect the defendant's possession. The allegation of the answer is in substance, that the plaintiff was employed by the defendant to remove from the warehouse certain

Sig. 8

goods, wares, and merchandise which the defendant had on storage there. This was the scope of the employment of the plaintiff. The handling of the property of other people, not connected with the defendant, was not in the line of the plaintiff's employment, and would neither impose responsibility nor confer privilege upon the defendant.

9. The defendant also contends that, the money having been found in the warehouse of which he was the tenant, that fact establishes a qualified property in the defendant as against the plaintiff. In support of this contention he cites sundry cases where customers casually left property in such places as barber shops, stores, and banks: *McAvoy* v. *Medina,* 11 Allen (Mass.) 548 (87 Am. Dec. 733); *State* v. *McCann,* 19 Mo. 249; *Loucks* v. *Gallogly,* 1 Misc. Rep. 22 (23 N. Y. Supp. 126); *Lawrence* v. *State,* 1 Humph. (Tenn.) 228 (34 Am. Dec. 644); *Kincaid* v. *Eaton,* 98 Mass. 139 (93 Am. Dec. 142). In this class of cases a *quasi* privity of property arises between the proprietor and his customers who attend at his place of business for the purpose of trade. They are clearly distinguishable from the case in hand. There is some testimony in the case tending to show that both the defendant and his brother for whom he professes to act disclaimed any connection with the money in the first instance. Moreover, it was a private place to which the defendant alleges only he and his brother had access. These circumstances are sufficient to take the case to the jury as against the contention of the defendant that, the money having been found in his warehouse by his employee, would give the defendant at least a qualified property in the money.

10. The case is rather like the case of *Hamaker* v. *Blanchard,* 90 Pa. 377 (35 Am. Rep. 664). In that case a chambermaid found $60 on the parlor floor of the hotel in which she was employed. On reporting it to the landlord, he said perhaps the money belonged to a certain

guest of the hotel. The maid thereupon deposited the money with the landlord, to be given to the guest or returned to her, if it was not the property of the guest. It proved to be not the property of the guest, and the court sustained the maid in her action to recover the money from the landlord, holding, in substance, that the landlord owned no duty to any one not his guest, and that the place of finding, although in his hotel, conferred no right in his favor as against the chambermaid respecting property lost by a stranger. The testimony is abundant on the question of this money being treasure trove, for, in the language of *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913: 65 L. R. A. 526: 102 Am. St. Rep. 627):

"It was money or coin found hidden or secreted in the earth or other private place; the owner being unknown."

It seems to be the principle respecting treasure trove, owing to its peculiar nature of being coin, that the present property is in the finder, as against every one but the true owner, provided that the true owner is unknown, and it matters not where or when the same is found, so that it is secreted in the earth or other private place. This court laid down this rule in the above case:

"The fact that the money was found on the premises of the defendants, or that the plaintiffs were in their service at the time, can in no way affect the plaintiffs' right to possession, or their duty in reference to the lost treasure."

11. The defendant seeks to avoid the effect of that case, as applied to the case in hand, by the fact that the coin in question there had been in the place where found for a great length of time. This, however, only affects the weight of the testimony concerning the circumstances of the finding and the condition of the money when found. There is testimony in this case that the comb cases in which the money was found were mouldy and covered with dust, indicating that the money had been placed

where found within no very recent period. We cannot say as a matter of law how ancient the deposit must be in order to include it within the rule of *Danielson* v. *Roberts*, or how recent it must be to take it out of the operation of that decision. It is sufficient to say that there is evidence on that question which must be left to the jury as against the motion for nonsuit. The case is distinguishable from *Ferguson* v. *Ray*, 44 Or. 557 (77 Pac. 600 : 1 L. R. A. (N. S.) 477 : 102 Am. St. Rep. 648 : 1 Am. & Eng. Ann. Cas. 1). That case was concerning gold-bearing quartz which had been mined and buried on the property of a landlord, who, when nothing else was shown, was declared to be entitled to its possession as against his tenant. The quartz was not treasure trove, which alone would serve to distinguish that case from this.

The rulings and instructions of the circuit court were substantially correct. There was evidence in the case sufficient to go to the jury for its decision on the questions of fact involved.

The result is that the judgment of the circuit court must be affirmed.        AFFIRMED.