Argued October 19; reversed December 14, 1948; petition for
rehearing denied April 29, 1949

# JACKSON *v.* STEINBERG

200 P. 2d 376

*Irving Korn,* of Portland, argued the cause for appellant. On the brief were Gunther F. Krause and Frederic W. Young, both of Portland.

*William J. Crawford,* of Portland, argued the cause for respondent. With him on the brief was Arthur C. Bull, of Portland.

Before ROSSMAN, Chief Justice, and LUSK, KELLY and HAY, Justices.

HAY, J.

The plaintiff in this case is Mrs. Laura I. Jackson. The defendant is Karl Steinberg, who is engaged in the

hotel business in Portland under the assumed business name of Arthur Hotel. Mrs. Jackson was employed by defendant as a chambermaid in his hotel.

The facts of the controversy are not disputed. Plaintiff entered defendant's employ on October 13, 1946. In describing her duties, she testified:

> "Well, where a guest checks out we are supposed to change the linen and dust and clean up the room, leave clean towels, and arrange the furniture like it should be, and take out anything that doesn't belong in there. Q. What do you do with that you take out? A. If it is of any value we take it to the desk clerk; if it isn't of any value we put it in the garbage."

On December 30, 1946, while cleaning one of the guest rooms, she found eight one-hundred-dollar bills, United States currency, concealed under the paper lining of a dresser drawer. The bills were stacked neatly, and her attention was drawn to them only by reason of their bulk having made a slight bulge in the lining. She removed the bills and delivered them immediately to the manager of the hotel, in order that they might be restored to the true owner, if he could be found, and subject to her claims as finder. When she entered defendant's employ, she had installed new paper linings in all dresser drawers in the guest rooms under her care, and the bills were not in this particular drawer at that time.

The hotel, during the period in question, was much patronized by seamen, some of whom, after being paid off in the Port of Portland, brought considerable sums of money with them into the hotel, usually in bills of large denominations. Defendant made an unsuccessful effort to discover the owner of the bills, by communicating, or attempting to communicate, by mail, with

each of the persons who had occupied this particular room from mid-October through December 31, 1946. Plaintiff then demanded of defendant that he return the money to her as finder, but he refused. She then, on July 10, 1947, filed this action in the District Court for Multnomah County, to recover the sum of $800 of defendant as money had and received. Defendant's affirmative defense was that, as an innkeeper, he is required, both at common law and by the Oregon statute, to hold the bills as bailee for the rightful owner.

Plaintiff had judgment in the District Court. On appeal to the Circuit Court, the case was, by stipulation, tried by the court without a jury. Defendant appeals from an adverse judgment.

Defendant's theory, and the basis of his assignments of error, is that the bills constitute mislaid property, presumed to have been left in the room by a former guest of the hotel, and that, as innkeeper, he is entitled to custody of the bills and bound to hold them as bailee for the true owner. Plaintiff, on the other hand, claims the right to the possession of the bills as treasure trove, as against all persons but the true owner.

■ Lost property is defined as that with the possession of which the owner has involuntarily parted, through neglect, carelessness, or inadvertence. 34 Am. Jur., Lost Property, section 2. It is property which the owner has unwittingly suffered to pass out of his possession, and of the whereabouts of which he has no knowledge. Anno., 9 A. L. R. 1388, 1392.

■ Mislaid property is that which the owner has voluntarily and intentionally laid down in a place where he can again resort to it, and then has forgotten where

he laid it. 34 Am. Jur., Lost Property, section 3; *Cohen v. Manufacturers Safe Deposit Co.*, 271 App. Div. 428, 65 N. Y. S. 2d 791, 792.

■ Abandoned property is that of which the owner has relinquished all right, title, claim, and possession, with the intention of not reclaiming it or resuming its ownership, possession or enjoyment. *Foulke v. N. Y. Consolidated R. Co.*, 228 N. Y. 269, 127 N. E. 237, 9 A. L. R. 1384, 1386; *Erickson v. Sinykin*, 223 Minn. 232, 26 N. W. 2d 172, 170 A. L. R. 697, 704; Bouvier Law Dict., title "Abandonment".

"Treasure trove consists essentially of articles of gold and silver, intentionally hidden for safety in the earth or in some secret place, the owner being unknown." Brown: Personal Property, § 13. The foregoing is a modern definition, sufficient for the purposes of the present discussion. Another is: "Money or coin, gold, silver, plate, or bullion found hidden in the earth or other private place, the owner thereof being unknown." Black, Law Dict. For other definitions, see Chitty, Prerogatives of the Crown, 152; 3 Coke, Inst., 132; I Bl. Comm., 295; 34 Am. Jur., Lost Property, section 4. Cf. Martin: Treasure Trove and the British Museum, 20 Law Quar. Rev. 27, 29, 32.

▪ ■ From the manner in which the bills in the instant case were carefully concealed beneath the paper lining of the drawer, it must be presumed that the concealment was effected intentionally and deliberately. The bills, therefore, cannot be regarded as abandoned property. *Kuykendall v. Fisher*, 61 W. Va. 87, 100, 8 L. R. A. (N. S.) 94, 56 S. E. 48, 11 Ann. Cas. 700.

▪■ With regard to plaintiff's contention that the bills constituted treasure trove, it has been held that the law of treasure trove has been merged with that of

lost goods generally, at least so far as respects the rights of the finder. *Danielson v. Roberts*, 44 Or. 108, 74 P. 913, 65 L. R. A. 526, 102 Am. St. Rep. 627; *Weeks v. Hackett*, 104 Me. 264, 71 A. 858, 19 L. R. A. (N. S.) 1201, 129 Am. St. Rep. 390, 15 Ann. Cas. 1156; *Vickery v. Hardin*, 77 Ind. App. 558, 133 N. E. 922; 36 C. J. S., Finding Lost Goods, section 5; 34 Am. Jur., Lost Property, section 4. Treasure trove, it is said, may, in our commercial age, include the paper representatives of gold and silver. *Huthmacher v. Harris's Adm'rs.*, 38 Pa. St. 491, 80 Am. Dec. 502, 503.

■ The natural assumption is that the person who concealed the bills in the case at bar was a guest of the hotel. Their considerable value, and the manner of their concealment, indicate that the person who concealed them did so for purposes of security, and with the intention of reclaiming them. They were, therefore, to be classified not as lost, but as misplaced or forgotten property (Anno., 9 A. L. R. 1388, 1390), and the defendant, as occupier of the premises where they were found, had the right and duty to take them into his possession and to hold them as a gratuitous bailee for the true owner. 34 Am. Jur., Lost Property, section 7; *McAvoy v. Medina*, 93 Mass. (11 Allen) 548, 549, 87 Am. Dec. 733; *Kincaid v. Eaton*, 98 Mass. 139, 141, 93 Am. Dec. 142; *Sovern v. Yoran*, 16 Or. 269, 274, 20 P. 100, 8 Am. St. Rep. 293; *Heddle v. Bank of Hamilton*, 17 B. C. 306, 6 B. R. C. 256, 259; *Foulke v. N. Y. Consolidated R. Co.*, supra (228 N. Y. 269, 127 N. E. 237, 9 A. L. R. 1384, 1386, 1387) ; *Silcott v. Louisville Trust Co.*, 205 Ky. 234, 265 S. W. 612, 613, 43 A. L. R. 28; *State ex rel. v. Buzard*, 235 Mo. App. 636, 144 S. W. 2d 847, 849; *Norris v. Camp*, (C. C. A. 10) 144 F. 2d 1, 3; 34 Am. Jur., Lost Property, section 6.

The decisive feature of the present case is the fact that plaintiff was an employee or servant of the owner or occupant of the premises, and that, in discovering the bills and turning them over to her employer, she was simply performing the duties of her employment. She was allowed to enter the guest room solely in order to do her work as chambermaid, and she was expressly instructed to take to the desk clerk any mislaid or forgotten property which she might discover. It is true that, in the United States, the courts have tended to accede to the claims of servants to the custody of articles found by them during the course of their employment, where the articles are, in a legal sense, lost property. 34 Am. Jur., Lost Property, section 10. In *Hamaker v. Blanchard,* 90 Pa. 377, 35 Am. Rep. 664, a servant in a hotel found a roll of bank notes in the public parlor. It was held that, as the money was found on the floor of a room common to all classes of persons, there was no presumption that it was the property of a guest, and that, when the true owner was not found, the plaintiff was entitled to recover it from the innkeeper, to whom she had delivered it. In the case at bar, however, the bills were not lost property.

An interesting and instructive case, *McDowell v. Ulster Bank,* is discussed in a leading article in 33 Irish Law Times, p. 225 (also noted in 60 Alb. L. J. 346). Plaintiff was a porter in a bank in Belfast. While sweeping out the bank's premises after closing time, he found, under one of the tables provided for the use of customers, a parcel containing notes of the value of 25 pounds. He handed them to the bank manager. The owner was not found, and plaintiff claimed the notes as his property. On his claim being rejected, he brought an action against the bank to

recover the value of the notes. The lower court held against him. On appeal, the decision was affirmed, on the ground that the possession of the servant is the possession of the master. The court said, in part, as follows:

"I do not decide this case on the ground laid down by Lord Russell in Sharman's case. I decide it on the ground of the relation of master and servant, and that it was by reason of the existence of that relationship and in the performance of the duties of that service that the plaintiff acquired possession of this property. I conceive that it is the duty of the porter of the Bank, who acts as caretaker, to pick up matters of this description, and to hand them over to the Bank. I hold that the possession of the servant of the Bank was the possession of the Bank itself, and that, therefore, the element is wanting which would give the title to the servant as against the master. * * *" McDowell v. Ulster Bank, supra.

On this branch of the case, the terse comment of a distinguished textwriter will suffice to express our own view:

"In those cases where servants are hired to clean up premises it seems that it might well be held that in finding things in the course of such cleaning the found property should belong to the master on this ground alone." Aigler: Rights of Finders, 21 Mich. L. Rev. 664, 681 (footnote).

In finding for plaintiff herein, the circuit court judge held that his decision should be governed by *Danielson v. Roberts,* supra (44 Or. 108, 74 P. 913, 65 L. R. A. 526, 102 Am. St. Rep. 627) and *Roberson v. Ellis,* 58 Or. 219, 114 P. 100, 35 L. R. A. (N. S.) 979. The present case may be distinguished from those cases, however. In the *Danielson* case, the plaintiffs

were employed merely to clean out an old chickenhouse, in the process of which work they found buried treasure. In the *Roberson* case, the plaintiff was employed merely to remove from a warehouse certain goods and rubbish, and, while doing so, found some concealed gold coins. The finding of the treasure was, in neither case, within the scope of the employment of the finders. As stated in the *Roberson* case:

> "The handling of the property of other people, not connected with the defendant [the owner of the premises], was not in the line of the plaintiff's employment, and would neither impose responsibility nor confer privilege upon the defendant."

In the present case, on the contrary, the search for mislaid or forgotten property was expressly within the scope of plaintiff's employment, and the delivery thereof to her employer was a part of her admitted duty.

■ The position of the defendant in the case at bar is fortified by the fact that, as an innkeeper, he is under common law and statutory obligations in respect of the found bills.

> "When a guest gives up his room, pays his bill, and leaves an inn without an intention of returning, the innkeeper's liability as such for the effects of the former guest left in his charge ceases, and he is liable thereafter merely as an ordinary bailee, either gratuitous or for hire, depending upon the circumstances." 28 Am. Jur., Innkeepers, section 94.

Our statute (section 55-203, O. C. L. A.), in effect when the facts of this case transpired, provides that, when baggage or property of a guest is suffered to remain in an inn or hotel after the relation of guest and innkeeper has ended, the innkeeper may, at his option, hold such property at the risk of such former guest.

Where money is found in an inn on the floor of a room common to the public, there being no circumstances pointing to its loss by a guest, the finder, even if an employee of the innkeeper, is entitled to hold the money as bailee for the true owner. *Hamaker v. Blanchard,* supra (90 Pa. 377, 35 Am. Rep. 664, 665). It would seem that, as to articles voluntarily concealed by a guest, the very act of concealment would indicate that such articles have not been placed "in the protection of the house" (Brown: Personal Property, section 14), and so, while the articles remain concealed, the innkeeper ordinarily would not have the responsibility of a bailee therefor. Upon their discovery by the innkeeper or his servant, however, the innkeeper's responsibility and duty as bailee for the owner becomes fixed.

In *Flax v. Monticello Realty Co.,* 185 Va. 474, 39 S. E. 2d 308, a hotel chambermaid found a diamond brooch, wrapped in tissue paper, concealed in a crevice in the margin of the mattress of a bed in one of the guest rooms. Thinking that the brooch belonged to the then occupant of the room, the maid placed it upon the bureau. There the guest found it, and laid claim to it as finder. He did, however, deposit it with the hotel manager in order that inquiry might be made to discover the owner. As the owner was not discovered, the guest demanded return of the brooch, and, on being refused, he brought an action in detinue against the hotel proprietor. *Held,* that an innkeeper is in direct and continued control of his guest rooms, which are to be considered as private rooms; that the brooch was unquestionably to be classified as mislaid and forgotten property; and that the innkeeper occupied the position of bailee for the true owner of the chattel.

140

The plaintiff in the present case is to be commended for her honesty and fair dealing throughout the transaction. Under our view of the law, however, we have no alternative other than to reverse the judgment of the lower court. It will be reversed accordingly.

On Respondent's Petition for Rehearing.

*William J. Crawford* and *Arthur C. Bull,* both of Portland, for the petition.

*Irving Korn, Gunther F. Krause* and *Frederic W. Young,* all of Portland, contra.

Before Lusk, Chief Justice, and Rossman, Kelly and Hay, Justices.

Denied.

HAY, J.

Respondent has petitioned for a rehearing in this case, chiefly upon the ground that our decision is contrary to previous decisions of this court.

It is argued that the court erred in holding that the bills were not treasure trove.

Coke's definition of treasure trove is as follows:

"Treasure trove is when any gold or silver, in coin, plate, or bullion hath been of ancient time hidden, wheresoever it be found, whereof no person can prove any property."
3 Inst. 132.

The treasure must have been hidden or concealed so long as to indicate that its owner, in all probability, is dead or unknown. 26 A. & E. Encyc. of Law, 1 ed., 537; *Danielson v. Roberts,* 44 Or. 108, 115, 74 P. 913, 65 L.R.A. 526, 102 Am. St. Rep. 627; *Roberson v. Ellis,* 58 Or. 219, 228, 114 P. 100, 35 L. R. A. (N. S.) 979. In the

case at bar, the bills had been concealed within a period of two and one-half months immediately prior to the time of their discovery. The recentness of the deposit justifies the inference that, at the time of the finding, the owner probably was still alive and would be discovered. These considerations further confirm our opinion that the bills were not treasure trove.

*Danielson v. Roberts,* supra, cited and relied upon by plaintiff, was an action in trover for conversion of money. Plaintiffs were employed by defendants to clean out an old henhouse situated on defendants' premises. In doing so, they discovered, partially buried in the ground, an old tin can containing over $7,000 in gold coin. They delivered the money to defendants, but afterwards sued them in trover for conversion thereof, alleging in their complaint facts tending to show that the money was treasure trove, and claiming possession thereof as finders. This court held that it was immaterial whether the money was technically lost property or treasure trove; in either case, the plaintiffs were entitled to its possession as against the defendants "unless the latter can show a better title". The court said, in part:

"* * * The fact that the money was found on the premises of the defendants, or that the plaintiffs were in their service at the time, can in no way affect the plaintiffs' right to possession, or their duty in reference to the lost treasure: Hamaker v. Blanchard, 90 Pa. 377, 35 Am. Rep. 664; Bowen v. Sullivan, 62 Ind. 281, 30 Am. Rep. 172; Tatum v. Sharpless, 6 Phila. 18; Durfee v. Jones, 11 R.I. 588, 23 Am. Rep. 528; Bridges v. Hawkesworth, 21 L.J.Q.B. 75. * * * "

It is to be observed that not a single one of the cases cited by the court sustained the court's view that

plaintiffs' claim was not defeated by the facts that the money was concealed in a private place upon premises in the occupation of defendants and was found there by plaintiffs while working upon the premises as defendants' employees. All of the cited cases, except Durfee v. Jones, had to do with lost money found in places to which the public had access, such as the floor of a hotel parlor, and the floor of a shop or store. Durfee v. Jones concerned money which had been lost by having fallen behind the lining of an old safe. The money did not belong to the owner of the safe, and it was successfully claimed by a person with whom the safe was left for purposes of sale. The decision has been criticized as "utterly indefensible". Aigler: Rights of Finders, 21 Mich. L. Rev. 664, 670. None of the cases cited dealt with treasure trove found upon private premises by a servant, or even with lost or mislaid property found by a servant upon private premises.

■ The legal principle that the possession of land includes possession of everything upon or within such land was expressly adopted by this court in *Ferguson v. Ray,* 44 Or. 557, 77 P. 600, 1 L. R. A. (N.S.) 477, 102 Am. St. Rep. 648, 1 Ann. Cas. 1, decided only six months after the *Danielson* case. Ferguson, a tenant in possession of a farm under a lease from Ray, discovered thereon a rich specimen of gold-bearing quartz lying upon the surface of the ground. Excavation upon the spot discovered other pieces of such quartz, the evidence indicating that it had been voluntarily deposited where found. Both Ferguson and Ray claimed possession of the quartz. *Held,* that the quartz was not treasure trove; that it was neither lost nor abandoned "in the sense that the finder is entitled to its possession or ownership as against the owner of the soil"; and that Ray, "being in the possession of the land, and

exercising ownership of it, thus manifesting an intention to prevent unauthorized interference'', there was a presumption that the right to possession of the quartz was in him.

In so holding, this court cited with approval *South Staffordshire Waterworks v. Sharman,* 2 Q.B. 44, 65 L.J.Q.B.N.S. 460, 74 L.T.N.S. 761. That case involved a dispute between a hired laborer and his employer. The laborer was engaged in cleaning out the bed of a pool of water on the employer's land, and, in so doing, found two gold rings, which he claimed as finder. It was held, as a matter of general principle, that when one is in possession of house or land, over which he manifests an intention of exercising control and preventing unauthorized interference, and something is found in that house or on that land, *whether by an employee of the owner or by a stranger,* the presumption is that possession of that thing is in the possessor of the land. The court quoted with approval from Pollock and Wright: Possession in the Common Law, 41, the following, which is also quoted with approval by this court in *Ferguson v. Ray,* supra:

> ''The possession of the land carries with it in general, by our law, possession of everything which is attached to or under that land, and, in the absence of a better title elsewhere, the right to possess it also. And it makes no difference that the possessor is not aware of the thing's existence.''

A recent English case (*Hannah v. Peel,* K.B., 1945, p. 509) questions the correctness of the *Sharman* holding to the extent that it covered things upon the land as distinguished from things attached to or under it. The court held, however: ''It is fairly clear from the authorities that a man possesses everything which is attached to or under his land.''

The case of *Roberson v. Ellis,* supra, (58 Or. 219, 114 P. 100, 35 L.R.A. (N.S.) 979) reaffirms the rule of *Danielson v. Roberts,* supra (44 Or. 108, 74 P. 913, 65 L.R.A. 526, 102 Am. St. Rep. 627) as to treasure trove, and, without discussing the effect of possession of the premises by someone other than the finder, undertakes to distinguish *Ferguson v. Ray* on the mere ground that it was not a treasure trove case. The court said, in part:

> "It seems to be the principle respecting treasure trove, owing to its peculiar nature of being coin, that the present property is in the finder, as against every one but the true owner, provided that the true owner is unknown, and it matters not where or when the same is found, so that it is secreted in the earth or other private place. * * * "

It is not necessary to a decision of the present case that we should attempt to reconcile the doctrine of *Danielson v. Roberts* and *Roberson v. Ellis,* supra, with that of *Ferguson v. Ray,* supra. It is sufficient to say that the present case is, in our opinion, governed by the rule of *Ferguson v. Ray.*

Our statute relating to innkeepers (sections 55-201, 55-202 and 55-203, O. C. L. A.) places certain limitations upon the liability of an innkeeper for loss or injury to the property of his guests. The first two sections do not appear to be applicable to the facts of the instant case. Under section 55-203, it is provided:

> "* * * whenever any person shall suffer his baggage or property to remain in any inn or hotel, after leaving the same as a guest, and after the relation of innkeeper and guest between such guest and the proprietor of such inn or hotel has ceased, * * * such innkeeper may at his option hold such baggage or property at the risk of such owner."

Respondent says that, as the innkeeper had an option, he had a choice of alternatives, and might either have taken possession of the property as bailee or have refused to do so. But the fact is that defendant did not have much freedom of choice. While he was reasonably entitled to assume that the bills were the property of a former guest, he was unaware of the identity of such guest, and, therefore, had no opportunity of relieving himself of possession of the bills. The circumstances thrust upon him the role of an involuntary or quasi bailee. 8 C.J.S., Bailments, section 15b; 28 Am. Jur., Innkeepers, section 94; 43 C. J. S., Innkeepers, section 18b.

■ Defendant's good faith is impugned, because of the fact that, instead of holding the actual bills, he deposited them to his credit in his own individual bank account, thereby rendering their identification by the true owner impossible. The bills were new. There was no evidence that they had been marked for identification purposes in any manner. Defendant testified that his attorney, Mr. Young, had made a record of the serial numbers. It would seem that this was a sufficient precaution to protect the interests of the true owner under the circumstances.

Finally, it is contended that the court erred in holding that plaintiff was in duty bound to deliver the bills to her employer.

There is no question but that it was admittedly a part of plaintiff's duty to defendant to seek for and find valuable property left behind in guest rooms by guests, and to deliver such property to defendant. Under such circumstances, the defendant had the absolute right to hold such property as against everyone but the true owner. See Fryer: Readings on Personal

Property, 3 ed., 361. Plaintiff cites, as contrary to this view, *Burns v. Clark*, 133 Cal. 634, 66 P. 12, 85 Am. St. Rep. 233. In that case, gold quartz was discovered by plaintiff while he was engaged, as defendant's employee, in leveling a site for a quartz mill. The quartz found was actually in place outside the boundaries of the mill site and upon public land of the United States. *Held, inter alia,* that, if digging for gold had been one of the objects of the work for which plaintiff was employed, any gold found by him would doubtless have belonged to his employer. The case is of no value as authority for plaintiff here, but tends rather to support defendant's position. The English case of *Hannah v. Peel,* supra, holds "if a man finds a thing as the servant or agent of another, he finds it not for himself, but for that other." We are satisfied that our holding as to plaintiff's duty to her employer in the premises was a correct statement of the law.

The petition for rehearing is denied.