456 So.2d 1309 (1984)
The STATE of Florida, Appellant,
v.
James W. GREEN and Walter J. Vogel, Appellees.
No. 83-2789.
District Court of Appeal of Florida, Third District.
October 9, 1984.
*1310 Clyde A. Willard, Daytona Beach, and Albert T. Gimbel, Tallahassee, for appellant.
James F. Pollack, Coral Gables and Walter J. Vogel, Miami, for appellees.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
At stake in this appeal are the competing claims of the landlords of an apartment building (Messrs. Green and Vogel) and the State of Florida to certain money seized by City of Miami police officers from a leased apartment in Green and Vogel's building. The trial court resolved the dispute in favor of the landlords and ordered the City to release the money to them. The State seeks review of that order, convincingly urging that the undisputed facts show that the landlords are without any legally cognizable interest in the money and that pursuant to Chapter 717, Florida Statutes, the money must be turned over to the State. We reverse.

I.
Late in 1975, police officers of the City of Miami responded to reports of a shooting at the apartment of one Carlos Fuentes. Fuentes had been shot and, shortly after the police arrived, was removed to a hospital.[1] In an ensuing search of the apartment,[2] the police found assorted drug paraphernalia, a gun and cash in the amount of $58,591.[3],[4] The property was seized, taken to the police station and placed in the custody of the City's Property Bureau.
About nine days after these events, the police learned that Fuentes, who was under no legal restraint, had been discharged from the hospital. All efforts by the police to locate Fuentes and his girlfriend, a co-occupant of Fuentes' apartment, were unsuccessful. Not surprisingly, neither Fuentes nor his girlfriend ever came forward to claim any of the items taken by the police from his apartment.
About four years later, in late 1979, Green and Vogel, Fuentes' lessors, brought suit against the City of Miami seeking a judgment declaring their right to, and replevin of, the money. The City filed a counterclaim for interpleader, joining Fuentes and the State of Florida as defendants. Fuentes defaulted, and in October 1983, after a non-jury trial based exclusively on the above-recited stipulated facts, the trial court rendered its order.

II.
Green and Vogel successfully contended below that they were entitled to the outright ownership of the money on the theory that it was abandoned on their premises. They continue to advance that theory on appeal, along with the alternative theory that they, as owners of the locus in quo,[5] are at least entitled to possession of the money found on their premises, even if it cannot be said that the money was abandoned. Neither contention has merit.

A.
While it is true that under the common law the finder of abandoned property, *1311 unlike the finder of lost or mislaid property, or treasure trove, is entitled to claim absolute ownership of the property, see Klein v. Unidentified, Wrecked and Abandoned Sailing Vessel, 568 F. Supp. 1562 (S.D.Fla. 1983); Campbell v. Cochran, 416 A.2d 211 (Del. Super. Ct. 1980), the person making that claim has the burden of proving the true owner's intent to abandon. Dade County v. City of North Miami Beach, 69 So.2d 780 (Fla. 1953); J.C. Vereen & Sons, Inc. v. City of Miami, 397 So.2d 979 (Fla. 3d DCA 1981).
At common law, abandoned property was defined as:
"that to which the owner has voluntarily relinquished all right, title, claim and possession, with the intention of terminating his ownership, but without vesting ownership in any other person, and with the intention of not reclaiming any future rights therein."
Campbell v. Cochran, 416 A.2d at 221. See Favorite v. Miller, 176 Conn. 310, 407 A.2d 974 (1978); Paset v. Old Orchard Bank & Trust Co., 62 Ill. App.3d 534, 19 Ill.Dec. 389, 378 N.E.2d 1264 (1978); Jackson v. Steinberg, 186 Or. 129, 200 P.2d 376 (1948). Thus, the burden upon the landlords was to prove that Fuentes voluntarily relinquished his right to the money with the intention of terminating his ownership and of not reclaiming any future rights therein at the time he was removed from his apartment suffering from a debilitating case of bullet wounds in his neck and shoulder. Manifestly, that burden was not met, and the trial court's finding that the money was abandoned in Fuentes' apartment is totally unsupported by the evidence.[6],[7]See Katsaris v. United States, 684 F.2d 758 (11th Cir.1982) (despite defendant's disclaimer of ownership of money seized in drug raid, property held not abandoned where disclaimer made for purpose of disavowing any connection with incriminating evidence and thus not voluntary relinquishment); Johnson v. City of Fairfax, 394 F. Supp. 387 (E.D.Va. 1972) (money seized during drug raid from arrested occupants of house not abandoned). See also O'Shaughnessy v. State, 420 So.2d 377 (Fla. 3d DCA 1982) (intent to abandon cannot be inferred from fact that property may be incriminating).

B.
The landlords' alternative claim that they, as owners of the premises upon which the money was found, are entitled to possession of the money is equally wanting. The common-law proposition that the owner of the locus in quo has the right to a possessory interest in unclaimed property superior to the finder[8] applies only if the unclaimed property can be deemed to have been lost, mislaid, or treasure trove. Campbell v. Cochran, 416 A.2d 211. See Pyle v. Springfield Marine Bank, 330 Ill. App. 1, 70 N.E.2d 257 (1946); Ray v. Flower Hospital, 1 Ohio App.3d 127, 439 N.E.2d 942 (1981); Jackson v. Steinberg, 186 Or. 129, 200 P.2d 376 (1948); Flax v. Monticello Realty Co., 185 Va. 474, 39 S.E.2d 308 (1946); but see Erickson v. Sinykin, 223 Minn. 232, 26 N.W.2d 172 (1947) (finder held to have superior interest to owner of *1312 locus in quo). At common law, lost property was defined as:
"that which the owner has involuntarily parted with through neglect, carelessness or inadvertence and the whereabouts of which is unknown to the owner,"
mislaid property as:
"that which the owner has intentionally laid down in a place where he can again resort to it, and then forgets where he put it,"
and treasure trove as:
"money, which has been concealed by the owner in a private place for safekeeping; treasure trove carries the thought of antiquity, i.e., it must have been concealed sufficiently long so as to indicate that the owner is probably dead or unknown." Campbell v. Cochran, 416 A.2d at 221.
It is obvious from the facts and circumstances of the present case that Fuentes' money, when taken from his apartment by the police, was not lost, mislaid or treasure trove. Therefore, ownership of the locus in quo is a legally insignificant fact in the present case.

III.
Having concluded that as between the lessors and the City of Miami, the lessors had no legally cognizable interest in the money, much less an interest superior to the City's, we turn to examine the City's interest vis-a-vis Fuentes.
There is little doubt that the City's seizure of the money made the City, as its counterclaim admits, a gratuitous bailee and placed upon it the responsibility of holding the money for the benefit of Fuentes and redelivering the property to him, as the true owner, upon demand. However, with the advent of the Florida Disposition of Unclaimed Property Act, § 717.01, et seq., Fla. Stat. (1961), a slightly modified version of the Uniform Disposition of Unclaimed Property Act, bailees of unclaimed property are relieved of their responsibilities after the property has remained unclaimed by the owner for more than seven years. Thus, the Act provides that "[a]ll intangible personal property ... that has remained unclaimed by the owner for more than 7 years ... is presumed abandoned," § 717.10, Fla. Stat. (1981)[9]; that every person holding property which is presumed abandoned under the Act must make a report to the State Department of Banking and Finance with respect to such property, § 717.12, Fla. Stat. (1981); and that such reported property must then be paid or delivered to the State, § 717.14, Fla. Stat. (1981). The objectives of the Florida Act are quite obviously identical to the objectives of the Uniform Act which are said to be:
"to protect the interests of owners, to relieve the holders from annoyance, expense and liability, to preclude multiple liability, and to give the adopting state the use of some considerable sums of money that otherwise would, in effect, become a windfall to the holders thereof."

Uniform Disposition of Unclaimed Property Act (1954), Prefatory Note, 8A U.L.A. 215-17 (1983).
See Travelers Express Co. v. State of Minnesota, 506 F. Supp. 1379 (D.Minn.), aff'd, 664 F.2d 691 (8th Cir.1981), cert. dismissed, 456 U.S. 920, 102 S.Ct. 1780, 72 L.Ed.2d 181 (1982); Douglas Aircraft Co. v. Cranston, 24 Cal. Rptr. 851, 58 Cal.2d 462, 374 P.2d 819 (1962).
*1313 Although the landlords argue that money, that is, as here, cash, is not within the purview of Chapter 717, we need not address this argument in light of our determination that the landlords have no legally cognizable claim to the money[10] and the fact that the City of Miami, the bailee of the money, has made no such argument. That being the case, as between the only parties with a remaining interest in the litigation, that is, the City and the State, the question of whether the disposition of unclaimed cash is governed by Chapter 717 is not before us.
Accordingly, the moneys seized by the City and unclaimed by the owner for more than seven years must, after appropriate compliance with the provisions of Sections 717.12 and 717.13, be paid over to the State Department of Finance and Banking. The judgment of the trial court is reversed with directions to enter judgment against the plaintiffs-lessors, and the cause is remanded for further proceedings as are consistent herewith.
Reversed and remanded with directions.
BASKIN, Judge (dissenting).
I dissent from the majority opinion which holds that the landlord of the apartment from which Miami police removed money has no legal interest in the funds and that the city, as a gratuitous bailee of the property, is required by section 714.14, Florida Statutes (1981), to deliver the money to the state. I see no reason to permit the city to exercise a superior interest merely because it took property to which it had no legitimate claim. Under the law in effect at the time, the money was not contraband subject to forfeiture, § 943.44, Fla. Stat. (1975),[1] and was not seized or held for use as evidence in either a civil or a criminal proceeding. Technically, the city acted as a wrongdoer. When the finder of unclaimed property is a wrongdoer, its interest is inferior to that of the owner of the locus in quo. Favorite v. Miller, 176 Conn. 310, 407 A.2d 974, 977 (1978). "The basis of the rule is that a wrongdoer should not be allowed to profit by his wrongdoing." Favorite, 407 A.2d at 978.
There is an additional reason for my dissent. The money taken by the police from the private residence does not constitute unclaimed property within the purview of chapter 717, Florida Statutes, the Florida Disposition of Unclaimed Property Act. For the most part, the act applies to property held by banks, insurance companies, utility companies, fiduciaries, state courts, and to undistributed dividends held by business associations. Its provisions pertain to intangible personal property, and tangible personal property excluding cash. The funds in question are not intangible personal property.[2] See Shistack, Disposition of Unclaimed Property  A Proposed Model Act, 46 Ill.Law Rev. 48 (1952). Although money is defined as intangible personal property in section 199.023, Florida Statutes (1981), that definition is limited to the Intangible Personal Property Tax Act.
For these reasons, I would hold that the rights of the owner of the locus in quo are superior to the rights of the city and state. *1314 Favorite, 407 A.2d at 977. Accordingly, I would affirm.
NOTES
[1] It is fairly inferable from the record that Fuentes was unconscious when the police arrived.
[2] The legality vel non of the search is not pertinent to any issue in this case.
[3] The amount of the money seized is stated as $58,591 in the police report attached as an exhibit to a pretrial stipulation between the parties. The order under review refers to the amount as "in excess of $58,000."
[4] At the time of the seizure in question, money  even if found to have been employed as an instrumentality in the commission of, or in aiding and abetting in the commission of, any felony  was not a contraband article subject to forfeiture. Compare § 943.41, Fla. Stat. (1975), with § 932.701, Fla. Stat. (1983).
[5] In Latin, "the place in which."
[6] A finding that the money was abandoned at a place other than Fuentes' apartment (e.g., at the police station when Fuentes voluntarily departed the hospital and made no effort to claim the money from the police), although it might have some support in the evidence, is of no help to Green and Vogel whose claim to ownership of the money vis-a-vis the finder is necessarily bottomed on the money having been abandoned on, not simply taken from, premises owned by them. See, e.g., Favorite v. Miller, 407 A.2d 974; Klein v. Unidentified, Wrecked and Abandoned Sailing Vessel, 568 F. Supp. 1562.
[7] Since the money was not abandoned in Fuentes' apartment, we need not consider whether Fuentes' apartment (in which, as a then current lessee, he had a legally recognized interest, see DeVore v. Lee, 158 Fla. 608, 30 So.2d 924 (1927)) could be considered the landlords' property so as to make colorable their claim to the money seized therein.
[8] But inferior to the true owner of the unclaimed property for whom the property is held as bailee. See Campbell v. Cochran, 416 A.2d at 221-22. Thus, the adage "finders keepers, losers weepers" does not represent an accurate statement of the common law.
[9] At the time the money was seized in 1975, the statutory period for presumed abandonment was fifteen years. See § 717.10, Fla. Stat. (1975). In 1977, the period was reduced to seven years. See Ch. 77-236, Laws of Fla. This reduction affected the holder's responsibility so that in seven years, that is, in 1982, the holder was required to act. Cf. Fuentes v. Wendt, 106 Misc.2d 1030, 436 N.Y.S.2d 801, 803 (N.Y. Sup. Ct. 1981) ("[i]t is the law in effect at the time of the expiration of the appropriate waiting period which governs the rights of the finder not the law in effect at the time of the finding" (emphasis in original)); State ex rel. Mallicoat v. Coe, 254 Or. 365, 460 P.2d 357 (1969) (disposition of property statute applies to property already in custody of holder, since owner's property rights unaffected and statute only changes holder from whom property can be redeemed).
[10] Had we determined that the money was in fact abandoned to the landlords, they would have been entitled to outright ownership, and the applicability of Chapter 717, which presupposes no factual abandonment under common law principles, would be irrelevant. Had we determined that the landlords as owners of the locus upon which lost or mislaid property or treasure trove was found were entitled to a possessory interest in the money, then the applicability of Chapter 717 would be relevant, since the question of whether the lessors, as holders, would be required to turn over the money to the State after the seven-year presumption of abandonment attached would be before us.
[1] The statute presently in effect, section 932.701, Florida Statutes (1983) provides that money may be considered contraband subject to forfeiture.
[2] Black's Law Dictionary 946 (4th ed. 1968):

INTANGIBLE PROPERTY. Used chiefly in the law of taxation, this term means such property as has no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, and franchises. (citations omitted)