Argued 29 June, decided 18 July, 1904.

**FERGUSON v. RAY.**

[77 Pac. 600.]

TREASURE TROVE.

1. Gold-bearing quartz rock found buried in the ground, where it had evidently been placed several years before, is not "treasure trove" belonging to the State or the finder.

LOST OR ABANDONED PROPERTY.

2. Quartz rock bearing mineral, found imbedded in the ground, unconnected with any ledge, pocket, or natural mineral deposit, is presumably part of the soil, and is not to be classed as lost or abandoned property, even though there were evidences that the rock had formerly been in a cloth sack.

From Jackson : HIERO K. HANNA, Judge.

Replevin action by Robert A. Ferguson against Charles R. Ray. The plaintiff, being in possession of defendant's premises under a lease, while cutting wood thereon in the

afternoon of November 14, 1901, discovered a rich speci-
men of gold-bearing quartz lying on top of the ground.
He at once secured a pick and shovel, and on scraping the
leaves away he found one or two other small pieces "on
top," as he testified," or almost on top of the ground, stick-
ing through the ground." On digging through the surface
he found others, extending to the depth of 10 or 12 inches,
in all weighing, approximately, $17\frac{1}{2}$ pounds. There were
no indications present of any natural ledge or lode of gold-
bearing or other quartz in place, or of any pocket or placer
or other natural deposit, the formation in which the spec-
imens were imbedded being described as "a loose surface
soil." Plaintiff disposed of a part of the quartz, estimated
as being half of it in value, and delivered the remainder,
$8\frac{3}{4}$ pounds in weight, to defendant, Ray. He now brings
trover for the quartz thus delivered to the defendant, al-
leging that it was obtained from him through duress and
threats of arrest and imprisonment and false and fraudu-
lent representations. The defendant answers (1) that the
specimens were his property by reason of having been ex-
tracted from his land, and (2) by virtue of an agreement
entered into between him and the plaintiff, whereby, upon
an ascertainment of values and an accounting, defendant
was to pay plaintiff one-half of the excess value, if any
should appear, between the rock delivered to defendant
and that disposed of by plaintiff.

The evidence shows that two trees standing nearest the
place of discovery bear some old marks, consisting of one
or more blazes, as if made with an ax, and indentations
having the appearance of being struck with a hammer or
some blunt instrument; that another has been partially
peeled, apparently at a more recent date; that many trees
and shrubs in the vicinity contain the marks of an ax, and
that many more have been cut away and made into wood.
The plaintiff testified touching the ore that "it had the

appearance of having been placed there at some time long ago." Another witness testified that the quartz had at one time been connected with a vein, and had been broken out; that there were indications of the marks of a pick or hammer upon portions of it, as it had the appearance of having been bruised, and that the break was evidently very old; and still another (using his language): "I found evidence of some kind of old cloth there—duck cloth. The ground was stained around a small place there, of a dark brown stain. I even found a few old duck ravelings—their impression—on the dirt I dug up. They were decayed through until they would not hold together, and the ground about it for a space of four or five feet was stained with this dark brown stain, or about the color of it, and parts of it showed prints of old cloth of some kind, and a few old ravelings that were perfectly rotten. I tried to pick them up, and they would not hold together." No evidence was adduced of a different trend or tendency relative to the finding or the place thereof, or of the circumstances and conditions attending either. Upon this condition of the record defendant moved for a nonsuit, which being denied, and judgment having been rendered adverse to him, he brings this appeal.     REVERSED.

For appellant there was an oral argument by *Mr. William D. Fenton* and *Mr. Austin S. Hammond*, with a brief over the names of *W. D. Fenton, A. S. Hammond*, and *A. E. Reames*, to this effect:

I. The rock was real estate. That term includes everything within or beneath the soil: 19 Am. & Eng. Enc. Law, (1 ed.) 1032; 18 Am. & Eng. Enc. Law, (2 ed.) 140; Kerr, Real Prop. § 22–90.

II. The rock belonged to the defendant as the owner of the soil: *Elwes* v. *Brigg Gas Co.* 33 Law Rep. (Ch. Div.) 562; *South Staffordshire Waterworks* v. *Sharman*, 65 L. J.

(N. S.) 460; *Regina* v. *Rowe*, 28 L. J. 128 (32 L. T. 339, 7 Weekly Rep. 236); *Goddard* v. *Winchell*, 86 Iowa, 71 (17 L. R. A. 788, 41 Am. St. Rep. 481).

III. Further, this being an action of replevin, defendant was entitled to the possession of the rock as owner of the premises on which it was found: *Sovern* v. *Yoran*, 16 Or. 269 (8 Am. St. Rep. 293, 20 Pac. 100); *Lawrence* v. *State*, 20 Tenn. (1 Humph.) 228 (34 Am. Dec. 644); *McAvoy* v. *Medina*, 93 Mass. (11 Allen) 548 (87 Am. Dec. 733); `Kincaid` v. *Eaton*, 98 Mass. 139 (93 Am. Dec. 142); *Livermore* v. *White*, 74 Me. 452 (43 Am. Rep. 600); *Bowen* v. *Sullivan*, 62 Ind. 281 (30 Am. Rep. 172); *State* v. *McCann*, 19 Mo. 249.

For respondent there was an oral argument by *Mr. Enoch B. Dufur* and *Mr. Hayward H. Riddell*, with a brief to this effect:

(1) Title to personal property may be acquired by occupancy, or the taking possession with the intent to appropriate them, of things which before belonged to nobody, or of things abandoned or lost by unknown owners: 18 Am. & Eng. Enc. Law, (1 ed.) 410.

(2) Abandoned property becomes the absolute property of the first occupant; and property which is involuntarily lost or left without the hope and expectation of again acquiring it, becomes the property of the finder, subject only to the superior claim of the owner: 1 Am. & Eng. Enc. Law, (1 ed.) 2, note; *Wyman* v. *Hulbert*, 12 Ohio, 81 (40 Am. Dec. 461).

(3) The finder of lost property has the right to retain it against everyone except the rightful owner: 7 Am. & Eng. Enc. Law, (1 ed.) 15, 805; *Armory* v. *Delamirie*, 1 Strange, 504; *Bridges* v. *Hawksworth*, 15 Jur. 1079 (Q. B. 75); *Bowen* v. *Sullivan*, 62 Ind. 281; *Lawrence* v. *Buck*, 62 Me. 275; *Clark* v. *Maloney*, 3 Harr. (Del.) 68; *Tatum* v. *Sharpless*, 6 Phila. (Pa.) 18; *Railroad Co.* v. *Haws*, 56 N. Y. 175; *Dur-*

*fee* v. *Jones*, 11 R. I. 588 (23 Am. Rep. 528); *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913); *Hamaker* v. *Blanchard*, 90 Pa. 377 (35 Am. Rep. 664); *Hoagland* v. *Amusement Co.* 170 Mo. 335 (94 Am. St. Rep. 740); *Gardner* v. *99 Gold Coins*, 111 Fed. 552; *Russell* v. *40 Bales Cotton*, Fed. Cases, No. 12,154.

(4) The place of finding is immaterial, except so far as it might bear upon the question as to whether the finder was a trespasser, had acted in good faith, and the article found had been legally lost: 7 Am. & Eng. Enc. Law, (1 ed.) p. 986; *Bowen* v. *Sullivan*, 62 Ind. 281 (30 Am. Rep. 172); *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913).

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. The theory upon which the cause is sought to be maintained is that the quartz, the subject of the dispute, was either lost or abandoned property, and that in either event plaintiff is entitled to its possession or value as against the defendant and all others except the true owner. As the property was found beneath the surface of the earth, not upon it, the question has been presented whether or not it is treasure trove. We are firmly impressed that it cannot be so considered. Treasure trove, and its legal status, according to Blackstone, "is where any money, or coin, gold, silver, plate, or bullion is found hidden in the earth, or other private place, the owner thereof being unknown; in which case the treasure belongs to the king. But if he that hid it be known, or afterwards found out, the owner, and not the king, is entitled to it. Also if it be found in the sea, or upon the earth, it doth not belong to the king, but to the finder, if no owner appears. * * Formerly all treasure trove belonged to the finder, as was also the rule of the civil law. Afterwards it was judged expedient for the purposes of the State, and particularly for the coinage,

to allow part of what was so found to the king, which was assigned to be all hidden treasure; such as is casually lost and unclaimed, and also such as is designedly abandoned, still remaining the right of the fortunate finder ": 1 Bl. Com. (Lewis' Ed.) c. 8, *295, 296. Bouvier gives the same definition, except that he adds that it includes not only gold and silver, but whatever may constitute riches, as vases, urns, statues, etc.: Bouvier Dict. Mr. Chief Justice APPLETON declares that "nothing is treasure trove except gold and silver ": *Livermore* v. *White,* 74 Me. 452, 456 (43 Am. Rep. 600). So, according to an article found in the Law Times (vol. 81, p. 21), the prerogative of treasure trove is strictly limited, and touches only gold and silver plate and bullion, discarding the baser metals ; and in *Elwes* v. *Brigg Gas Co.* 33 Law Rep. [Ch. Div.] 592, it is said that Roman coins, not being gold or silver coins, did not fall within the royal prerogative of treasure trove. A case has come to our notice where it seems to have been conceded that certain cups, a chalice, pyxes, and a paten, all of silver, were treasure trove (*Attorney General* v. *Moore,* Law Rep. 1 Ch. Div. 676), and another where solid gold rings and ornaments were so classed: *Queen* v. *Thomas,* 33 Law Jour. N. S. p. 22. In a case from Pennsylvania (*Huthmacher* v. *Harris' Adm'rs,* 38 Pa. 491, 80 Am. Dec. 502) the court say, however, of treasure trove: "Though commonly defined as gold or silver hidden in the ground, may, in our commercial day, be taken to include the paper representatives of gold and silver, especially when they are found hidden with both of these precious metals." This is manifestly an enlargement of the common-law idea of the term, and we have been unable to find any cases that go beyond it.

We find expressions by Chancellors Walworth and Kent, however, that would seem to give it further scope, even to the extent of comprising all chattels or goods hidden. We

quote from the former in *McLaughlin* v. *Waite*, 5 Wend. 405 (21 Am. Dec. 232): "If chattels are found secreted in the earth or elsewhere, the common law presumes the owner placed them there for safety, intending to reclaim them. If the owner cannot be found, he is presumed to be dead, and that the secret died with him. In such cases the property belongs to the sovereign of the country as the heir to him who was the owner; but if they are found upon the surface of the earth, or in the sea, if no owner appears to claim them, it is presumed they have been intentionally abandoned by the former proprietor; and as such they are returned into the common mass of things, as in a state of nature." And from the latter in his Commentaries (2 Kent, Com. *357): "Nor does this right of acquisition [by finding] extend to goods found hidden in the earth, and which go under the denomination of treasure trove. Such goods, in England, belonged to the king." It is at once apparent, however, that neither of these distinguished jurists was attempting to define treasure trove, but was distinguishing it as it respects the rights of the finder from goods found upon the surface of the earth; hence that they intended no innovation upon the common-law idea of the term. Indeed, Chancellor WALWORTH cites as his sole authority from volumes 1 and 2 of Blackstone's Commentaries, the substance of which, as it relates to the subject in hand, we have quoted above; and it is only upon the principle indicated that the citation supports him at all. But, without further reference to the authorities, or attempting to define more precisely the scope and meaning of the term "treasure trove," we may very safely conclude that, in view of the nature of the property in controversy, it does not fall within the classification. It is neither gold nor bullion. It is simply what may be correctly denominated gold-bearing quartz. The testimony varies touching the relative weight of the gold as compared

with the rock in which it is carried, the estimates ranging
from one-fourth to three-fourths, but it is manifest that in
either extreme it cannot be fitly or properly styled bullion,
and there is clearly nothing else that will give it the stamp
of treasure trove.

2. This brings us back to the real controversy: Was it
lost or abandoned property, or, rather, does the evidence
suffice to carry the case to the jury upon that contention?
The novelty of the affair is such as to induce hesitation,
and to involve us in some doubt; but a careful survey of
the authorities impresses us that it cannot be characterized
as either lost or abandoned in the sense that the finder is
entitled to its possession or ownership as against the owner
of the soil. Nor do we think that any reasonable inference
that such is its nature and character can be deduced from
the evidence, and the case therefore is not one proper for
the jury to pass upon. It has been very well understood
in this jurisdiction, since the case of *Sovern* v. *Yoran*, 16
Or. 269 (20 Pac. 100, 8 Am. St. Rep. 293) and the more
recent one of *Danielson* v. *Roberts*, 44 Or. 108 (74 Pac. 913)
what is meant by lost or abandoned property. To lose is
casually and involuntarily to part with the possession, so
that the mind has no impress of, and can have no recourse
to, the event; and, if the property is found on the surface
of the earth, the conditions suggest that it has been inten-
tionally abandoned, and as such has returned to the com-
mon mass of things, in a state of nature, which belongs to
the first occupant or finder, the owner not appearing (1
Bl. Com. [Lewis' Ed.] c. 8, *295, 296; 2 Bl. Com. [Lewis'
Ed.] c. 26, *402; 2 Kent, Com. *356; *McLaughlin* v. *Waite*,
5 Wend. 405, 21 Am. Dec. 232), the distinction between
losing and abandonment being that one is involuntary,
while the other is by intent or design. But the result, as
it relates to the property, is practically the same, the owner
not appearing to lay claim to it. In the one case the finder

has the right to the possession against all except the true owner. In the other he acquires the absolute property by right of his occupancy. It is the presumption of abandonment that obtains until the owner appears and claims the property that gives the right as legal possessor to the first occupier, the presumption being disputable by the rightful owner. Such presumption or inference does not obtain as to property intentionally left or deposited in a designated place, and possibly forgotten for the time being, as the loss depends upon something more than knowledge or ignorance, or the memory or want of memory of the owner as to the locality at any given moment. "In such case," says Baron Parke, "the taker is not justified in concluding that the goods were lost, because there is little doubt he must have believed that the owner would know where to find them again, and he had no pretense to consider them abandoned or derelict."

The principle is amply illustrated in the cases. In *Lawrence* v. *State*, 1 Humph. 228 (34 Am. Dec. 644), a customer placed his pocketbook on a table in a barber shop, and, his attention being attracted to the outside, went out, forgetting it. The barber discovered the pocketbook, and attempted to appropriate it, and it was held that it was not lost property. In *McAvoy* v. *Medina*, 11 Allen, 548 (87 Am. Dec. 733), the plaintiff picked up a pocketbook in a barber shop, and handed it to the barber, but, the owner not appearing to claim it, sued to recover it. In disposing of the case Mr. Justice DEWEY says: "This property is not, under the circumstances, to be treated as lost property in that sense in which the finder has a valid claim to hold the same until called for by the true owner. The property was voluntarily placed upon a table in the defendant's shop by a customer of his, who accidentally left the same there, and has never called for it. The plaintiff also came there as a customer, and first saw the same, and took it from the

table. The plaintiff did not by this acquire the right to take the property from the shop, but it was rather the duty of the defendant * * to use reasonable care for the safe-keeping of the same until the owner should call for it." See, also, *Kincaid* v. *Eaton*, 98 Mass. 139 (93 Am. Dec. 142); *State* v. *McCann*, 19 Mo. 249; *People* v. *McGarren*, 17 Wend. 460. The circumstances must be such, considering the place and the conditions under which the property was found, as to lead to the inference that the property was casually or involuntarily left where found, or there can be no losing. This is well illustrated by the case of *Durfee* v. *Jones*, 11 R. I. 588 (23 Am. Rep. 528). Plaintiff bought an old safe, and left it with his agent to sell, who in turn left it with defendant for a like purpose. The defendant, in looking through it, found a roll of bills, amounting to $165, between the wooden lining and the sheet-iron exterior, which could only have gotten or been placed there through a large crack in the lining. The court said : "We think the money here, though designedly left in the safe, was probably not designedly put in the crevice or interspace where it was found, but that, being left in the safe, it probably slipped or was accidentally shoved into the place where it was found without the knowledge of the owner, and so was lost, in the stricter sense of the word. The money was not simply deposited and forgotten, but deposited and lost by reason of a defect or insecurity in the place of deposit."

The circumstances and conditions of the place where found afforded the *indicia* from which the inference of a losing was deduced. Now, in the case at bar, the quartz was not found on the surface of the earth. True, a small piece or so was picked up from the surface, but, if this were all, there would have been no controversy. The remainder was found imbedded in the earth, and the presumption that it was lost which attends property found on

the surface of the earth is wanting, so that there was no inference for the jury, deducible from the place of finding and the conditions of the property, that it was lost property. Indeed, the evidence, it would seem, refutes any such presumption or inference. The property was valuable. It had certainly at some time previous been detached by human agency from a ledge, its natural place of deposit; and the evidence that it was once contained in a bag of some kind of cloth, and that trees nearest the place of finding bore some old marks, apparently made by design to aid in locating the property, would indicate that it was voluntarily deposited where found. What effect the elements have had upon the conditions and position in which it was left could. only be the merest conjecture. In any event, there could be no inference of a losing or abandonment from the conditions present at the finding, and this is all the knowledge we have respecting the matter; so that the case was not such as was proper to be left to the jury for their determination upon the theory that the property was lost or abandoned.

The case, to our mind, falls within the principle of a class of cases which we will now notice, and which counsel for defendant rely upon as controlling. The one most nearly illustrative is *South Staffordshire Waterworks* v. *Sharman*, 65 L. J. (N. S.) 460. The subject of the controversy there was two gold rings found by a laborer in a pool upon the premises of his employers. He was engaged in cleaning out the pool, and, after throwing out large quantities of mud, came upon the rings and some other articles of interest. Lord RUSSELL, in announcing his opinion, quotes from Pollock and Wright on · Possession in the Common Law, pp. 40, 41, as follows: "The possession of the land carries with it in general, by our law, possession of everything which is attached to or under that land, and, in the absence of a better title elsewhere, the right to possess it

also. And it makes no difference that the possessor is not aware of the thing's existence." "It is free to any one who requires a specific intention as part of *de facto* possession to treat this as a positive rule of law. But it seems preferable to say that the legal possession rests on a real *de facto* possession, constituted by the occupier's general power and intent to exclude unauthorized interference." And then says: "It is upon the principle expressed in this [the latter] passage that I base my judgment, for it shows the broad distinction between the present case and the case contemplated in the passage cited to us in course of the argument from Blackstone's Commentaries, showing that a jewel cast into the sea or on the public highway could not be said to be in the possession of any one, because no one had a right to exclude another from the public place"; and concludes as follows: "The general principle is that where any one is in possession of house or land which he occupies, and over which he manifests an intention of exercising a control and preventing unauthorized interference, and something is found in that house or on that land by a stranger or a servant, the presumption is that the possession of the article found is in the owner of the *locus in quo*."

Another case is noted in Law Notes (vol. 7, No. 8, p. 160), decided by Supreme Court Justice FORBES of New York; not so authoritative as the preceding one, as it does not come from a court of appeals, but the principle is recognized. Some ancient dishes, supposed to have been buried by Colonel Edmeston, an officer in the French-Indian war, 150 years ago, at a time when he was obliged to flee from the Indians, were recently plowed up, and it was held as to them to be well established that where a thing is imbedded in the soil the right to it is in the owner of the land, unless it is of such a character as to constitute treasure trove. Other cases announcing the same principle are *Elwes* v. *Brigg Gas Co.* 33 Law Rep. Ch. Div. 592; *Regina* v. *Rowe*,

Bell's Crown Cas. 93. Now, we have here property not treasure trove, found imbedded in the soil under circumstances repelling the idea that it has been lost. How long a time it had been in the place where found is conjectural, of course, but it had probably been there many years— long enough, at least, that only a trace of the cloth bag that once contained it was left; and the ownership of the land where found is in the defendant. Being in the possession of the land, and exercising ownership over it, thus manifesting an intention to prevent unauthorized interference, we must .conclude, as was announced by Lord RUSSELL in *South Staffordshire Waterworks* v. *Sharman*, 65 L. J. (N. S.) 460, that "the presumption is that the possession of the article found is in the owner of the *locus in quo*."

There was error, therefore, in denying the nonsuit, and the judgment appealed from will be reversed, and the cause remanded for such other proceedings as may seem proper, not inconsistent with this opinion.     REVERSED.