**A. M. COUCH, Appellant,**

v.

**Jack A. SCHLEY, Sr., Appellee.**

**No. 3205.**

Court of Civil Appeals of Texas.

Waco.

Oct. 21, 1954.

Rehearing Denied Nov. 10, 1954.

See also 255 S.W.2d 885.

W. H. Wren, Hamilton, for appellant.

H. J. Cureton, Jr., Meridian, for appellee.

HALE, Justice.

The subject matter of this suit is $1,000 in currency which appellant found buried in the ground while working on premises belonging to appellee. Neither party to the appeal is the true owner of the money in controversy. The claim of appellant thereto is based upon the theory that "finders are keepers," while the claim of appellee is based upon his contention that the money was not "lost property" but was "mislaid property" and that he, as owner of the premises where the money was found, is entitled to the same.

The case was tried before a jury. Upon the conclusion of the evidence appellant duly presented his motion for a peremptory instruction in his favor, on the ground that the undisputed evidence showed he was the finder of the money, that he took possession of the same, that its owner was unknown and that appellee had failed to show any right to its custody or possession. The court overruled appellant's motion and submitted the case to the jury on special issues. In response to the issues submitted, the jury found that the money was not lost property but was mislaid property as those terms were defined in the court's charge. The court defined lost property to mean "property that the owner has involuntarily parted with through neglect, carelessness or inadvertence" and mislaid property to mean "property which the owner intentionally places where he can again resort to it and then forgets where he placed it." Based upon the findings of the jury as above set forth, the court rendered judgment denying the claim of appellant and awarding the custody of the money to appellee as bailee for the true owner.

Appellant predicates his appeal upon the contention that the court below should have granted his motion for an instructed verdict and should have rendered judgment awarding the money to him against all the world except the true owner, because he says the undisputed evidence showed that he found the money buried in the ground, took possession of it, that the owner thereof was unknown or had abandoned the same, and that the evidence wholly failed to show that appellee had any better right, title or interest in or to the money than he had as its finder. On the other hand, appellee says that since the undisputed evidence showed the money was found buried in the ground on his land, it was his property absolutely, and that, in any event, since the jury found the money was mislaid property, he was entitled to the possession thereof as against all but the true owner, because of the fact

that he owned the premises where the money was found.

The evidence introduced in the trial court is without any substantial dispute in so far as it concerns the conflicting claims of the parties to this appeal. Appellant was digging in the dirt floor of an old garage on premises belonging to appellee in order that he might lay the foundation for a concrete floor to be placed in the garage. After he had dug to a depth of about twelve inches, the pick with which he was digging struck an object which he said was a glass jar and, upon opening the same he found therein the sum of $1,000 in currency, ranging in denomination from $10 to $50. Appellant retained possession of the money until appellee returned to his home and as a result of the discussion which then ensued between the parties, the money was delivered to a stakeholder for safekeeping and was thereafter placed in the registry of the court below where it now reposes.

Neither party to the appeal has cited any statutory law or court decision in Texas which has any bearing upon the legal questions here involved, and we have found none. Therefore, we must look to the common law of England and to the decisions of the courts in other American states construing and applying the same in order to arrive at a reasonable basis upon which to rest our decision in this case.

In the early English case of Armory v. Delamirie, 1 Str. 505, decided in 1722, the right of the finder of lost property to retain it against all persons except the true owner was recognized. In that case a chimney sweeper's son found a jewel and carried it to a goldsmith to determine what it was. The goldsmith refused to return the jewel to the boy on the ground that the latter was not its owner. But the court, in disposing of the controversy contrary to the contention of the goldsmith, held that the boy, by the finding, had acquired such a property in the jewel as would entitle him to keep it against all persons other than the true owner. So far as we have been able to ascertain, this case has been uniformly followed, both in England and America, and the law on the point there at issue is now well settled.

In keeping with the holding in the foregoing case, it is said in Cooley's Blackstone, 3rd Ed., Vol. 1, page 401: "Whatever movables are found upon the surface of the earth, or in the sea, and are unclaimed by any owner, are supposed to be abandoned by the last proprietor; and, as such, are returned into the common stock and mass of things; and therefore they belong, as in a state of nature, to the first occupant or fortunate finder, unless they fall within the description of waifs, or estrays, or wreck, or hidden treasure; for these, we have formerly seen, are vested by law in the king, and form a part of the ordinary revenue of the crown."

In discussing "The King's Revenue," it is said in Cooley's Blackstone, 3rd Ed., Vol. 1, pages 294–296, that treasure-trove, "which is where any money or coin, gold, silver, plate, or bullion, is found hidden in the earth, or other private place, the owner thereof being unknown," belongs to the king unless he who hid it be afterwards found out, and in the latter event the owner, and not the king, is entitled to the treasure. Also, "if it be found in the sea, or upon the earth, it doth not belong to the king, but the finder, if no owner appears. So that it seems it is the *hiding,* and not the *abandoning* of it, that gives the king a property. * * * Formerly, all the treasure-trove belonged to the finder; as was also the rule of the civil law. Afterwards, it was judged expedient for the purposes of the state, and particularly for the coinage, to allow part of what was so found to the king; which part was assigned to be all *hidden* treasure; such as is *casually lost* and unclaimed and also such as is *designedly abandoned,* still remaining the right of the fortunate finder."

The term "treasure-trove" literally means "found treasure." As a matter of course, no object can be "found" in the broadest sense of the word unless it has been "lost." But, as shown by the above quotation from Blackstone, treasure-trove as a legal concept

in the English common law, related only to money or coin, etc., which was hidden either in the earth or in some private place, the owner thereof being unknown. No object which is hidden or intentionally placed by its owner where he can again resort to it but is prevented from doing so because he forgets where he placed it, regardless of whether such object be paper money, coins, or any other type of chattel, can be said to constitute lost property in the sense that its owner had involuntarily parted with it. However, the common law doctrine of treasure-trove or "found treasure" did not stem from any legal distinction between "lost" and "misplaced" property, as is well illustrated by the following statement which is taken from Blackstone's Commentaries: "The finding of deposited treasure was much more frequent, and the treasures themselves more considerable, in the infancy of our Constitution than at present. When the Romans and others inhabitants of the respective countries which composed their empire, were driven out by the northern nations, they concealed their money under-ground; with a view of resorting to it again when the heat of the irruption should be over, and the invaders driven back to their deserts. But, as this never happened, the treasures were never claimed; and on the death of the owners, the secret also died along with them. The conquering generals, being aware of the value of these hidden mines, made it highly penal to secrete them from the public service. In England, therefore, as among the fuedists, the punishment of such as concealed from the king the finding of hidden treasure was formerly no less than death; but now it is only fine and imprisonment."

■ In most of the states of this country the rights and duties of the finder of lost or misplaced chattels are now, and have been for many years, regulated more or less by statutes which provide in substance for the advertisement of the goods found and that, if the owner does not appear to claim the same within a specified time, they shall belong absolutely to the finder, or partly to the finder and partly to some public fund. But, so far as we have been able to discover, Texas does not have and has never had any such statutory law. Notwithstanding the fact that the decisions in other jurisdictions appear to be somewhat in conflict by reason of obitur dicta statements and the manner in which the rights and duties of the finder of lost or misplaced chattels has been changed and delimited by statutory enactment, we believe the general rule of the common law as applied to the facts shown by the record in this case is substantially as follows: where a person finds money (and by that we mean either paper money or coins) which has been hidden for a considerable period of time in the earth, or in any other private place, the owner thereof being unknown, the finder is entitled to retain the possession of the money against all persons whomsoever, other than the true owner thereof.

As early as 1830, in writing the majority opinion of the Court for the Correction of Errors from the Supreme Court of New York in the case of McLaughlin v. Waite, 5 Wend. 404, 21 Am.Dec. 232, Chancellor Walworth said: "There is no doubt as to the right of the finder of a chattel to retain the possession thereof against all the world except the rightful owner. If chattels are found secreted in the earth or elsewhere, the common law presumes the owner placed them there for safety, intending to reclaim them. If the owner cannot be found, he is presumed to be dead, and that the secret died with him. * * * If a person is in possession of a chattel which no one has a legal right to take from him, he is both the possessor and the proprietor thereof, and may recover against any person who attempts wrongfully to divest him of that possession which is the evidence of his right. It was on this principle that the case of Armory v. Delamirie, 1 Str. 505, was decided."

In the case of Danielson v. Roberts, 44 Or. 108, 74 P. 913, 914, 65 L.R.A. 526, the Supreme Court of Oregon held that plaintiffs, who, while working for defendants, unearthed money on defendants' premises, which the evidence tended to show had been buried for some considerable time by the owner, who was probably dead or unknown,

were entitled to possession of the money as against the defendants. We think this is one of the ablest opinions to be found in the reported cases on the subject here under consideration. In the course of the opinion, the court said: "It is immaterial whether the money discovered by plaintiffs was technically lost property or treasure trove or, if treasure trove, whether it belongs to the state or to the finder, or should be disposed of as lost property if no owner is discovered. In either event the plaintiffs are entitled to the possession of the money as against the defendants, unless the latter can show a better title. The reason of the rule giving the finder of lost property the right to retain it against all persons except the true owner applies with equal force and reason to money found hidden or secreted in the earth as to property found on the surface. * * * The money for which this action is brought came lawfully into the possession of the plaintiffs. The circumstances under which it was discovered, the condition of the vessel in which it was contained, and the place of deposit, as shown by the plaintiffs' testimony, all tend with more or less force to indicate that it had been buried for some considerable time, and that the owner was probably dead or unknown. The plaintiffs, having thus come into its possession, were charged with the duty of holding it for the true owner, if he could be ascertained, and, if not, of making such disposition thereof as the law required. The possession of the money was cast upon them by the force of circumstances. They were consequently under the obligation of taking reasonable care of it until it could be returned to the true owner, or otherwise disposed of, and they may therefore maintain such actions or proceedings as may be necessary to enable them to retain or recover its possession. The fact that the money was found on the premises of the defendants, or that the plaintiffs were in their service at the time, can in no way affect the plaintiffs' right to possession, or their duty in reference to the lost treasure. Hamaker v. Blanchard, 90 Pa. 377, 35 Am.Rep. 664; Bowen v. Sullivan, Guardian, 62 Ind. 281, 31 Am. Rep. 172; Tatum v. Sharpless, 6 Phila. 18; Durfee v. Jones, 11 R.I. 588, 23 Am.Rep. 528; Bridges v. Hawkesworth, 21 L.J.Q.B. 75."

In the case of Weeks v. Hackett, 104 Me. 264, 71 A. 858, 19 L.R.A.,N.S., 1201, 129 Am.St.Rep. 390, decided by the Supreme Court of Maine in 1908, it was held that the owner of the soil in which treasure-trove is found, acquires no title to it by virtue of his ownership of the land.

It was held by the Court of Appeals of Georgia in the case of Groover v. Tippins, 51 Ga.App. 47, 179 S.E. 634, decided in 1935, that the finder of treasure-trove is entitled thereto as against the owner of the land where the same is found, and as against all the world save the true owner, in absence of statutory provisions to the contrary.

In the case of Zornes v. Bowen, 223 Iowa 1141, 274 N.W. 877, decided by the Supreme Court of Iowa in 1937, it was held that money found concealed under the floor of a house on leased premises by the child of a tenant, in the absence of any evidence as to who placed the money in its hiding place, was treasure-trove, and the child, as finder, was entitled to possession of the money as against everyone except the true owner.

Appellee has cited us to no case decided in any jurisdiction where it has been held that the finder of money hidden in the earth is not entitled to the possession thereof as against the owner of the premises upon which it was found, solely because of such ownership, and we know of no case where such holding has been made.

Under the facts of this case, we cannot say that appellee ever had any legal right, title or interest in or to the currency in controversy. He had owned and occupied the premises where it was found for only about one year. He did not secrete the money where it was found and he did not know who had hidden it or how long it had been hidden. The evidence as a whole repels any inference that this money ever became a part of the realty owned by appellee. Furthermore, there was no evidence

which, in our opinion, showed or tended to show that appellee owed any duty to the owner of the money either to discover the same or to preserve and protect it after it had been discovered and appropriated by appellant.

■ Because the undisputed evidence in this case shows, among other things, that appellant was the finder of the money in controversy while it was hidden or secreted in the earth under such circumstances as to indicate that it had been so hidden or secreted for a considerable period of time, that the true owner thereof was unknown, and that in all reasonable probability he had either died without revealing his secret to anyone or had abandoned the buried treasure, we hold that the trial court should have granted appellant's motion for an instructed verdict in his favor as against appellee.

Accordingly, the judgment appealed from is reversed and judgment is here rendered awarding the possession of the money in dispute to appellant.