JACK A. SCHLEY, SR. V. A. M. COUCH

No. A-4989. Decided November 23, 1955.
Rehearing overruled December 21, 1955.
(284 S.W. 2d Series 333)

*H. J. Cureton, Jr.,* of *Meridian,* and *H. W. Allen,* of Hamilton, for petitioners.

The Court of Civil Appeals erred in holding that petitioner, as owner of the premises was not entitled to possession, and

that the doctrine of treasure trove was applicable. Foster v. Fidelity Safe Deposit Co., 264 Mo. 89, 174 S.W. 376; McAvoy v. Medina, 11 Allen (Mass) 548; Danielson v. Roberts, 44 Ore. 108, 74 Pac. 913.

W. H. Wren, of Hamilton, for respondent.

Cited Weeks v. Hackett, 104 Me. 264, 71 Atl. 858, 19 L.R.A. N.S. 1201; Zornes v. Bowen, 223 Ia. 1141, 274 N.W. 887; Bullard v. Oatman, 271 S.W. 422.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

July 7, 1952 petitioner was the owner of a tract of land near Hamilton, Texas, upon which was situated a dwelling house with an attached garage and storeroom. The petitioner had acquired these premises from a Mr. Adams about June 15, 1952. At the time petitioner moved upon the premises there was a concrete floor covering only the front half of the garage, and the remaining half was a dirt floor. A few days prior to July 7, 1952, petitioner employed a Mr. Tomlinson and his crew of workmen— among whom was the respondent—to put a concrete floor in the rear half of the garage. Petitioner's son was removing the soil from that portion of the garage floor which was being covered with concrete with a tractor having a blade attached thereto. The garage faced east and the dwelling was immediately south of and adjoining the garage. The storeroom was immediately west of and adjoined the garage, and to enter the storeroom one had to come through the garage. Due to the construction of the tractor and the wall of the garage it was impossible to remove the soil adjacent to the west wall (and being the east wall of the storeroom) with the blade attached to the tractor. Respondent's employer directed respondent to take a pick and loosen up this hardpacked soil which the blade could not reach. While digging in this soil, respondent's pick struck a hard object and respondent found the $1,000 sued for buried in the ground. The money was in currency. Included in this currency were two Hawaiian bills issued during World War II. All bills were fresh, and well preserved and of the size of present currency. A glass jar top and some glass from a jar were found nearby and evidencing that the money had been buried in a glass jar. The erection of the garage had been begun by a Mr. Allen, a predecessor in title, who had sold the property in April or May of 1948 at which time the garage was in the process of being built but had not been completed. Only one of the prior owners of this land asserted that he had buried the money in

the garage. After two trials before a jury wherein this claimant was unable to secure favorable findings, he took a nonsuit and urged no further claim to the money. The owner of the money is unknown.

After some preliminary happenings which do not affect the case, respondent sued petitioner for the money and certain damages. The trial court submitted the case to the jury upon two special issues. One inquired if the money were "lost" property, and the other inquired if the money was "mislaid" property. The jury answered the money was "mislaid" property, and upon that verdict the trial court rendered judgment in favor of the defendant as bailee for the true owner. Upon appeal the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for the respondent against the defendant for the money. The Court of Civil Appeals held that the money constituted neither "lost" nor "mislaid" property, but fell into yet a third category known in some jurisdictions as "treasure trove." It accordingly held the right of possession to be in the finder. 272 S.W. 2d 171.

■ Neither party claims to be the true owner of the money, but each claims the right to have possession of the money for the benefit of the true owner, should he ever appear and establish his claim. Title to the money is not involved, but only the right of possession thereof.

■ This is a case of first impression in Texas. If the money constitutes treasure trove the decision of the Court of Civil Appeals is correct and in accordance with the decided cases from other jurisdictions. However, we have decided not to recognize the "treasure trove" doctrine as the law in Texas, but that this case should be governed by the rules of law applicable to lost and mislaid property. There is no statutory law in Texas regarding the disposition of such property, or provisions defining the respective rights of various claimants. The rule of treasure trove is of ancient origin and arose by virtue of the concealment in the ground and other hiding places of coin, bullion, and plate of the Roman conquerors when they were driven from the British Isles. These Romans expected to return at a later date and reclaim their buried and hidden treasures. For a time laws were in effect which gave all this treasure trove which might be discovered to the sovereign, but it was later held to belong to the finder, and this regardless of whether he was in ownership or possession of the land where the treasure was found. The doctrine only applied to "money or coin, gold, silver,

plate, or bullion found hidden in the earth or other private places, the owner thereof being unknown." Black, Law Dictionary. Such doctrine has never been officially recognized in Texas, although it has been recognized and applied under the common law in many states of the American Union. We can see no good at the present time, and under present conditions in our nation, to adopt such a doctrine. Therefore, we treat the money involved herein as no different from other personal property and will adjudicate the possession thereof in accordance with the rules governing personal property generally. We think the proper rule regarding treasure trove is that stated by the Oregon Supreme Court in 1948 in the case of Jackson v. Steinberg, 186 Ore. 129, 200 Pac. 2d 376, 378, and 205 Pac. 2d 562, as follows:

"With regard to plaintiff's contention that the bills constituted treasure trove, it has been held that the law of treasure trove has been merged with that of lost goods generally, at least so far as respects the rights of the finder. Danielson v. Roberts, 44 Or. 108, 74 P. 913, 65 L.R.A. 526, 102 Am. St. Rep. 627; Weeks v. Hackett, 104 Me. 264, 71 A. 858, 19 L.R.A., N.S. 1201, 129 Am. St. Rep. 390, 15 Ann. Cas. 1156; Vickery v. Hardin, 77 Ind. App. 558, 133 N.E. 922; 36 C.J.S., Finding Lost Goods Sec. 5; 34 Am. Jur., Lost Property, section 4, * * * ."

In other words, under modern concepts, the finder of buried money, if allowed to retain it, is so allowed because the circumstances of the particular case determine the property to be "lost" property and not because it falls into a separate category called "treasure trove." Lost property is defined as "that which the owner has involuntarily parted with through neglect, carelessness or inadvertance." Note 170 A.L.R. 706; 34 Am. Jur. 631-2; Danielson v. Roberts, 44 Or. 108, 74 Pac. 913, 65 L.R.A. 526, 102 Am. St. Rep. 627; Jackson v. Steinberg, supra; Paulus, "Finder v. Locus in Quo-An Outline," Vol. 6, Hastings Law Journal, Feb. 1955, pp. 180, 190. Lost property may be retained by the finder as against the owner or possessor of the premises where it is found.

On the other hand, "mislaid property is to be distinguished from lost property in that the former is property which the owner intentionally places where he can again resort to it, and then forgets. Mislaid property is presumed to be left in the custody of the owner or occupier of the premises upon which it is found, and it is generally held that the right of possession to mislaid property as against all except the owner is in the owner

or occupant of such premises." 170 A.L.R. 707; 34 Am. Jur. 632, Secs. 3 and 6; Jackson v. Steinberg, supra, (2) and (6); Hastings Law Journal, supra; Baylor Law Review, Vol. 7, p. 331. The facts of this case show that the bills were carefully placed in the jar and then buried in the ground and further show that the owner did not part with them inadvertently, involuntarily, carelessly or through neglect. Rather it shows a deliberate, conscious and voluntary act of the owner desiring to hide his money in a place where he thought it was safe and secure, and with the intention of returning to claim it at some future date. All the evidence indicates that the money must have been buried in the garage after the garage had been built. That was only a scant four years prior to the finding of the money. In the case of Heddle v. Bank of Hamilton, 17 B.C. 306, 6 B.R.C. 256, 5 D.L.R. 11, a lapse of four years was not sufficient to establish that the property had been lost beyond possibility of restitution to the true owner. See also 34 Am. Jur. 635. The character of the property is to be determined from all the facts and circumstances present in the particular case involving property found.

■ The facts in this case show, as a matter of law ,that the property is not to be classed in the category of lost property. Conceivably, there may be cases in which the issue as to whether the propery is lost or mislaid property would be for determination by a jury under appropriate instructions by the court. The trial judge submitted the matter to a jury in the present case. There were no objections raised by either party to the definitions of "lost" and "mislaid" property as contained in the charge. The jury upon consideration of all the facts found that the property was mislaid rather than lost property.

Property which is found embedded in the soil under circumstances repelling the idea that it has been lost is held to have the characteristics of mislaid property. The finder acquires no rights thereto, for the presumption is that possession of the article found is in the owner of the locus in quo, and, accordingly it is held that the right to possession of such property is in the landowner. Ferguson v. Ray, (1904) 44 Or. 557, 77 P. 600, 1 L.R.A., N.S. 477, 102 Am. St. Rep. 648, 1 Ann. Cas. 1; Burdick v. Chesebrough (1904) 94 App. Div. 532; 88 N.Y.S. 13; and Groover v. Tippins (1935) 51 Ga. App. 47, 179 S.E. 634.

No proof having been made in the present case as to who is the true owner of money found, we will indulge the presump-

tion that he has forgotten where he secreted it, or has died since he secreted the property.

Respondent relies strongly upon the case of Danielson v. Roberts, supra, to sustain his right to recover the money from petitioner. In that case the money was found in an old rusty half gallon tin can containing a number of musty and partially deteriorated tobacco sacks. This demonstrated the money had been buried for some considerable period of time, and the court said: "The circumstances under which it was discovered, the condition of the vessel in which it was contained, the place of deposit (in an old hen house) * * * all tend to indicate that it had been buried for some considerable time, and that the owner was probably dead or unknown." In all the other cases relied upon by respondent the property was held to be either lost property or treasure trove, and belonged to the finder. That is recognized as the correct rule of law in such cases, but we have held, under the facts of this case, the property herein not to be lost property, but to be mislaid property, and the well recognized rules of law award the possession to the owner of the premises upon which the property is found. This being mislaid property, the right to possession thereof is in the owner of the premises where it was found.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered November 23, 1955.

MR. JUSTICE CALVERT, joined by JUSTICE WALKER and CHIEF JUSTICE HICKMAN, concurring.

I can agree to the judgment rendered herein but there is much in the majority opinion to which I cannot agree. I suggest that in an effort to simplify the law of found property, as applied in other common law jurisdictions, by declining to approve and adopt the law of "treasure trove" in this state, the majority opinion has only succeeded in confusing it.

As pointed out in the majority opinion the law of treasure trove is of ancient origin and was a well established part of the common law of England when, in 1840, it was declared by statute in this state that "The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or re-

pealed by the Legislature." Article 1, R.C.S. of Texas. The law of treasure trove, except where abolished by statute, has been universally applied as a part of the common law in the other states of this union.

Assuming for the purposes of this opinion that we are justified in departing from the common-law doctrine of treasure trove because that doctrine is "inconsistent with the conditions and circumstances of our people," Grigsby v. Reib, 105 Texas 597, 153 S.W. 1124; L.R.A., 1915 E, 1; Diversion Lake Club v. Heath, 126 Texas 129, 86 S.W. 2d 441, a point of departure rarely to be taken, Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S.W. 740, we should depart from it only to the extent necessary to nullify that doctrine. The majority opinion goes much further. It not only nullifies the doctrine of treasure trove, it declares, in effect, that we will not recognize in this state any of the common-law rules dealing with the right to possession of found property other than those distinguishing between "lost" and "mislaid" property.

The majority opinion declares, as a matter of law, that the property involved in this case is not to be classed as "lost" property because the facts show conclusively it was not "involuntarily parted with through neglect, carelessness or inadvertence." It then declares the property to be "mislaid property" on authority of Ferguson v. Ray, 44 Ore. 557, 77 Pac. 600, 1 L.R.A., N.S. 477, 102 Am. St. Rep. 648, 1 Ann. Cas. 1; Burdick v. Chesebrough, 94 App. Div. 532; 88 N.Y. S. 13, and Groover v. Tippins, 51 Ga. App. 47, 179 S.E. 634.

None of the cited cases declare property of this type to be mislaid property. Groover v. Tippins specifically recognized the doctrine of treasure trove and held that 37 pounds of gold dust and gold bullion dug from the earth beneath a rock was treasure trove and was to be left in the possession of the finder. The judgment of the trial court, dismissing the suit of the landowner on general demurrer, was affirmed. In Burdick v. Chesebrough some of the owners of the land sued to recover from the possession of the finder certain valuable earthenware which had been imbedded in the soil. The trial court overruled a demurrer to the petition and the Supreme Court of New York reversed and remanded on the ground that all owners of the land had not been made parties plaintiff. In Ferguson v. Ray the finder of certain gold bearing quartz, found imbedded in the soil sued to recover it from the landowner. The trial court's judgment ran in favor of plaintiff. The Supreme Court of Ore-

gon held that the defendant's motion for nonsuit, made at the close of evidence, should have been granted.

In none of the cases analyzed did the courts treat the property involved as mislaid property. In no case cited to this court or found by us has it been held that property found imbedded in the soil fell in the category of mislaid property, or had the characteristics of mislaid property.

The majority opinion fails to recognize a fourth category of found property which is illustrated by Burdick v. Chesebrough and Ferguson v. Ray, the very cases cited by the majority; that is, the category of personal property found imbedded in the soil. See also 34 Am. Jur. 634, Lost Property, Sec. 5; 170 A.L.R. 706, 708. The majority opinion has adopted the rule applicable to this category of property but has defined it as mislaid property. There is no need for this departure from the common-law rules. The rule as stated in American Jurisprudence is as follows: "Where property, not treasure trove, is found imbedded in the soil under circumstances repelling the idea that it has been lost, the finder acquires no title thereto, for the presumption is that the possession of the article found is in the owner of the locus in quo." All we need do in order to achieve our objective of rejecting the law of treasure trove is to eliminate from the foregoing rule the words "not treasure trove," thus adopting the rule that all personal property or chattels found imbedded in the soil under circumstances repelling the idea that it has been lost will be held to be rightfully in the possession of the owner of the soil as against all the world except the true owner.

In order to hold the property to be mislaid property; that is, property "which the owner intentionally places where he can again resort to it, and then forgets," it is necessary that we adopt the strained presumption that one who deliberately, consciously and voluntarily hides his money in the soil where he thinks it will be safe and secure with the intention of returning to claim it, "forgets" where he put it. It seems to me to be unreasonable to presume that one, being of sound mind and memory, having deliberately buried $1,000 in currency in the soil inside of a garage for safe keeping should "forget" where he put it. I think it more reasonable, under the circumstances, to presume that he is dead or has been unable to return to claim it. If we would adopt the rule applicable to other personal property imbedded in the soil and apply that rule to gold, silver, bullion, etc., heretofore characterized as treasure trove in the

common law, we would need no strained presumptions because we would not be confronted with the defiinition of mislaid property.

The majority conclude, as a matter of law, that the property involved in this case is not lost property. If we have but the two categories of lost and mislaid property and the property is not lost property as a matter of law, then it follows that it is mislaid property as a matter of law, and the jury finding becomes wholly immaterial. But the majority then say there may circumstances under which the issue as to whether the property is lost or mislaid property would be a jury question. What circumstances? By its reference to Danielson v. Roberts and Heddle v. Bank of Hamilton, the majority infer that a circumstance which might make the issue one of fact is the length of time the property has been imbedded in the soil. Neither of the cited cases afford any basis for this inference. To follow this inference to its logical conclusion would be to hold that property deliberately and consciously hidden in the soil by one intending to return and claim it would be mislaid property as a matter of law if proof showed it had been there for only four years, lost property if the proof showed it had been there for fifty years, and either mislaid or lost property, according as a jury might choose to find, if it had been there for twenty-five years. How can this reasoning possibly fit into the definitions of lost and mislaid property adopted by the majority? Using the above examples the result is this: If the facts clearly established, as in the instant case, that the property was deliberately buried in the soil, we would nevertheless hold, as a matter of law, that the owner had involuntarily parted with it " 'through neglect, carelessness or inadvertance' " if it had been in the soil for fifty years; if it had been there only five years we would hold that the owner had intentionally placed it there and had forgotten where he put it; and if it had been there twenty-five years we would let the jury decide whether it was put there through " 'neglect, carelessness or inadvertance' " on the one hand, or whether it had been put there intentionally and its place of hiding forgotten on the other. That kind of reasoning simply does not square with sound principles of law.

I respectfully submit that the issue should be one of law altogether, and if the evidence shows that the property is imbedded in the soil it should be held to fall in the same classification however long it may have been in the soil. This result would be reached by holding that property classed as treasure trove in other jurisdictions will be treated in this State as other per-

sonal property found imbedded in the soil, and that possession thereof will be awarded to the owner of the soil as a matter of law.

I fear the quotation from Jackson v. Steinberg is being mis-interpreted by the majority. A reading of the opinion in Daniel-son v. Roberts, (186 Or. 129, 200 Pac. 2d 378) clearly reflects that what was meant by the court in saying that "the law of treasure trove has been merged with that of lost goods gener-ally, at least so far as respects the rights of the finder" was that the rights of the finder are the same—the right to posses-sion as against all but the true owner—whether the property be treasure trove or lost property found on the surface of the soil. The majority has interpreted the statement as meaning that the law of treasure trove has been merged into the law of *lost and mislaid* property and that a court may therefore choose whether it will be treated as lost or mislaid property as respects the rights of the finder.

Neither Danielson v. Roberts nor Heddle v. Bank of Hamil-ton lend any support to the idea that the length of the hiding determines whether the classification of the property shall be a law or a fact question. The court held, as a matter of law, in Danielson v. Roberts that the possession of the money found imbedded in the soil should be left with the finder as against the landowner but remanded for a jury trial of the landowner's plea that he was in fact the owner of the money. In Heddle v. Bank of Hamilton a clerk in a bank found a wallet containing $300 which had been left on a desk in the bank. He turned it in immediately to the proper officials who advertised for the owner. The owner was not found in four years and the clerk sued for recovery of the money. This is a classic example of "mislaid" property. The court held possession to be in the bank which would be the proper result under the law of mislaid prop-erty. The opinion rested in part, however, on the theory that the clerk was the bank's servant and his possession was pos-session for the bank. In any event, I can find nothing in the opinion supporting the majority's conclusion that the court held that "a lapse of four years was not sufficient to establish that the property had been lost beyond possibility of restitu-tion to the true owner." The court did not hold or infer that the period of time intervening between the finding of the prop-erty and the filing of the suit had any effect whatever on the classification of the property as "lost" or "mislaid" property.

If we are to disavow the doctrine of treasure trove—and I

doubt the wisdom of doing so—I would not undertake to narrow the classifications of found property to "lost" and "mislaid" property. I certainly would not hold that the classification of property found imbedded in the soil was a jury question, and I would not hold that the length of the period for which it had been buried had any effect in determining whether it was lost or mislaid property. I would simply hold that all property found imbedded in the soil, including that known as treasure trove in England and other jurisdictions, was, as a matter of law, to be held in the possession of the landowner as bailee or trustee for the true owner.

Opinion delivered November 23, 1955.

MR. JUSTICE WILSON, concurring.

I concur in the result. In so far as money buried or secreted on privately owned realty is concerned, the old distinctions between treasure-trove, lost property, and mislaid property seem to be of little value and not worth preserving. The principal point of distinction seems to be the intent of the true owner who necessarily is not known and not available. Therefore the evidence on his intent will usually be scant and uncontroverted. From my experience as a District Attorney, I would guess his motivation often to be that of the one-talent servant in the parable in the 25th Chapter of Matthew: "And I was afraid, and went and hid thy talent in the earth: * * *." We should hold that the owner of the land has possession of all property secreted in, on and under his land and continues to hold possession for the true owner, who, incidentally, may not always be the person doing the burying. Matthew 13:44—"Again, the kingdom of heaven is like unto treasure hid in a field; the which when a man hath found, he hideth, and for joy thereof goeth and selleth all that he hath and buyeth that field." What reason is there for transferring possession to the individual who happens to dig up the property? Or for guessing about the intent or the memory of the person doing the burying? A simple solution for all of these problems is to maintain the continuity of possession of the landowner until the true owner establishes his title.

Opinion delivered November 23, 1955.

Rehearing overruled December 21, 1955.