Argued and submitted November 29, 2005, judgment on defendants' counterclaim affirmed; judgment on third-party claim reversed; otherwise affirmed April 26, 2006

Matt BERGERON,
personal representative of
the Estate of Robert L. Praegitzer, deceased,
*Respondent,*

*v.*

AERO SALES, INC.,
and Jack Kasper,
*Appellants.*

AERO SALES, INC.,
and Jack Kasper,
*Appellants,*

*v.*

William A. CURTRIGHT,
*Respondent.*

William A. CURTRIGHT,
*Cross-Plaintiff,*

*v.*

Matt BERGERON,
as personal representative of
the Estate of Robert L. Praegitzer, deceased,
*Cross-Defendant.*

01C-14441; A123865

134 P3d 964

J. Michael Alexander argued the cause for appellants. With him on the brief was Swanson, Lathen, Alexander & McCann, PC.

Joseph Penna argued the cause for respondent Matt Bergeron and filed the brief for Robert L. Praegitzer, deceased.

Vance D. Day argued the cause and filed the brief for respondent William A. Curtright.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Our task in this appeal is to identify the legal owner of several thousand gallons of jet fuel that had been stored in an underground tank beneath a private hangar at McNary Field in Salem. Kasper purchased the fuel and stored it in the tank. Praegitzer owned the hangar and the fuel tank at the time that Kasper placed the fuel in the tank, but did not know that Kasper had placed the fuel in the tank.[1] Praegitzer subsequently sold the hangar and the fuel tank to Curtright. When Kasper learned that the hangar had been sold and he sought to remove the fuel, Curtright refused to allow him to do so, insisting that he had purchased the fuel along with the hangar and the fuel tank.

Praegitzer brought a trespass action against Kasper for using Praegitzer's hangar without permission. Kasper filed a counterclaim against Praegitzer for conversion of the jet fuel.[2] Kasper also filed a third-party claim against Curtright for conversion of the jet fuel. Curtright counterclaimed against Kasper for trespass and conversion and filed cross-claims against Praegitzer for indemnity and breach of contract.

The parties filed cross-motions for summary judgment on Kasper's conversion claims. The trial court granted the motions of Praegitzer and Curtright and denied Kasper's motion. The court then entered a judgment reflecting that outcome and dismissing Praegitzer's claim against Kasper as well as Curtright's counterclaims against Kasper and cross-claims against Praegitzer. Kasper appeals, arguing that the trial court erred in denying his motion for summary judgment on his conversion claims and in granting Praegitzer's and Curtright's summary judgment motions.[3]

---

[1] After the parties submitted their appellate briefs, but before oral argument, the personal representative of Praegitzer's estate was substituted for Praegitzer as plaintiff in this action. For simplicity, we will use Praegitzer's name to refer to both him and his estate.

[2] No issue is raised on appeal about Kasper's ability to use a third-party claim as the means to recover damages against Curtright for conversion. Consequently, we do not address that issue.

[3] Neither Praegitzer nor Curtright appeal the dismissal of their various claims. Thus, we do not discuss them any further than is necessary to describe the procedural posture of this case.

With regard to Kasper's conversion claim against Praegitzer, we affirm the trial court's resolution of the cross-motions for summary judgment without further discussion. With regard to Kasper's conversion claim against Curtright, we conclude that the trial court erred in granting Curtright's motion and in denying Kasper's motion. Consequently, we reverse and remand on Kasper's conversion claim against Curtright.

On appeal from cross-motions for summary judgment, if error is assigned to the granting of one and the denial of the other, both rulings are reviewable. *Coats-Sellers v. ODOT*, 192 Or App 432, 434, 85 P3d 881 (2004). "When, as here, the facts are not in dispute, we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law." *Busch v. Farmington Centers Beaverton*, 203 Or App 349, 352, 124 P3d 1282 (2005).[4]

The tort of conversion is the intentional exercise of control over a chattel belonging to another that is so serious an interference with the other's right to control the chattel that the actor must be required to pay the other the full value of the chattel. *Reynolds v. Schrock*, 197 Or App 564, 578, 107 P3d 52, *rev allowed*, 339 Or 475 (2005). Curtright does not dispute that Kasper purchased the fuel and stored it in the fuel tank under the hangar. Nor does he dispute that he deprived Kasper of control over the fuel and kept it for his own use. But what Curtright does dispute is that Kasper had any legal right to control the fuel. If Kasper had a legal right to the fuel that was superior to Curtright's interest in it, Curtright is liable for conversion. Conversely, if Curtright's interest is superior to Kasper's, then Curtright is not liable for conversion. Thus, the crux of this matter, as stated at the outset, is this: Who owned this fuel?

Curtright's argument is based on Article 2 of the Uniform Commercial Code, which deals with the sale of

---

[4] On appeal Kasper has, at times, suggested that he believes that there are disputed issues of fact. Our review of the case reveals that what Kasper identifies as factual issues are actually legal issues. We are confident that there are no disputed issues of material fact in this case.

goods.[5] Specifically, Curtright relies on ORS 72.4030, which provides:

"(1) A purchaser of goods acquires all title which the transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though:

"(a) The transferor was deceived as to the identity of the purchaser; or

"(b) The delivery was in exchange for a check which is later dishonored; or

"(c) It was agreed that the transaction was to be a 'cash sale'; or

"(d) The delivery was procured through fraud punishable as larcenous under the criminal law.

"\* \* \* \* \*

"(3) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives the merchant power to transfer all rights of the entruster to a buyer in ordinary course of business.

"(4) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting of the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The general rule under ORS 72.4030(1) is that a purchaser can acquire only the title that his seller had. There are exceptions to that rule, two of which are relevant to this case. First, a person with voidable title can transfer good title to a good faith purchaser for value. *Id*. Second, where a party has entrusted goods to a merchant who deals in goods of that kind, the merchant can transfer all of the rights of the entrusting party to a buyer who purchases the goods in the

---

[5] The jet fuel at issue in this case is a "good" as that term is defined in ORS 72.1050(1).

merchant's ordinary course of business. ORS 72.4030(3). Our first task is to determine whether either exception applies to this case.

■ The first exception applies only where the transferor has voidable title. Based, in part, on the context provided by ORS 72.4030(1)(a) to (d), we conclude that "voidable title" is the title obtained by a purchaser when the owner willingly parts with the goods but the transaction is flawed in some way, for example, the purchaser pays for the goods with a check that is later dishonored. *See* Henry J. Bailey III, 1 *The Oregon Uniform Commercial Code* § 2.91, 178 (2d ed 1990) ("[I]f the owner of goods delivers them to another person with the intent of selling them to that person, the latter has voidable title and the power to resell the goods and give good title to a third person * * *."); *see also Petition of Hennessy*, 343 Pa Super 293, 298, 494 A2d 853, 856 (1985) (interpreting Pennsylvania's equivalent of ORS 72.4030 and concluding that, "[i]n order to have voidable title, one must obtain goods through the assent of the original owner, but not necessarily acquire good title").

■ Although, as we discuss below, Praegitzer may have acquired some sort of interest in the jet fuel by virtue of it being stored on his property, we conclude that his interest did not constitute "voidable title" within the meaning of ORS 72.4030. There is no evidence in the summary judgment record that could support a finding that Kasper assented to selling, or otherwise transferring, his interest in the jet fuel to Praegitzer. As a result, Praegitzer did not have voidable title and the first exception to the general rule is inapplicable to these facts. That is, even if Curtright were a good faith purchaser for value, all that he could have received from Praegitzer was whatever title Praegitzer had in the jet fuel, unless the entrustment exception applies.

■■ It does not. The entrustment exception applies only where possession of the goods is entrusted to a "merchant who deals in goods of that kind." ORS 72.4030(3). The summary judgment record is devoid of any evidence that Praegitzer dealt in jet fuel.[6] Thus, even if Kasper "entrusted"

---

[6] The absence of any evidence on that point also defeats any argument that Curtright is a "buyer in ordinary course of business" for purposes of

the jet fuel to Praegitzer under ORS 72.4030(4), Praegitzer could not transfer Kasper's rights in the jet fuel to Curtright under ORS 72.4030(3).

 Because neither relevant exception applies to this case, the general rule from ORS 72.4030(1) applies. That is, the purchaser (Curtright) acquired only the title that the transferor (Praegitzer) had or had power to transfer. ORS 72.4030(1). Thus, we must determine what interest Praegitzer had in the fuel by virtue of its storage in his fuel tank under his hangar. In making that determination, we are guided by the common law of personal property. *See* ORS 71.1030 ("Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity * * * shall supplement its provisions.").

In *Ferguson v. Ray*, 44 Or 557, 77 P 600 (1904), the plaintiff was the tenant of the defendant landowner. While chopping wood one day, the plaintiff discovered that someone had buried 17 and one-half pounds of gold quartz on the property. The discovery was a surprise to the defendant, but he nonetheless claimed the gold quartz as his own, by virtue of his ownership of the property. The court was confronted with the question of who had a superior interest in the gold quartz.

In the course of concluding that the defendant had a superior interest in the quartz as to everyone but the true owner, the court explained the rule that

> "[t]he possession of the land carries with it in general * * * possession of everything which is attached to or under that land, and, *in the absence of better title elsewhere*, the right to possess it also. And it makes no difference that the possessor is not aware of the thing's existence."

*Id.* at 567-68 (emphasis added; internal quotation marks omitted). Under that reasoning, Praegitzer had the right to possess the jet fuel under his hangar, notwithstanding his ignorance of its existence. His rights in the jet fuel, whether

ORS 72.4030(3). ORS 71.2010(9) defines "buyer in ordinary course of business" to mean "a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, *in the business of selling goods of that kind.*" (Emphasis added.)

labelled "title" or something else, were superior to those of everyone except one with "better title."

Kasper had better title to the fuel. The fuel was not a "treasure trove"—and hence the property of the finder—because it was not "[m]oney or coin, gold, silver, plate, or bullion found hidden in the earth or other private place, the owner thereof being unknown." *Jackson v. Steinberg*, 186 Or 129, 134, 200 P2d 376 (1948), *reh'g den*, 186 Or 129, 205 P2d 562 (1949) (internal quotation marks omitted). Kasper had not abandoned the property, for there was no evidence that he intended to relinquish ownership of the fuel. *See State v. Pidcock*, 89 Or App 443, 448, 749 P2d 597, *aff'd*, 306 Or 335, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989) ("Abandonment is the voluntary relinquishment of the possession of an object by the owner with the intention of terminating his or her ownership. The intent to abandon must be clear and must be accompanied by some specific act of abandonment."). Nor had Kasper "lost" the fuel, for he had "intentionally left or deposited [it] in a designated place." *Ferguson*, 44 Or at 565. In *Ferguson*, the court explained that, " '[i]f chattels are found secreted in the earth or elsewhere, the common law presumes the [chattels'] owner placed them there for safety, intending to reclaim them.' " *Id*. at 563 (quoting *McLaughlin v. Waite*, 5 Wend 405, 21 Am Dec 232 (NY 1830)). Thus, Kasper retained ownership of the jet fuel notwithstanding the fact that he stored it in someone else's tank located on someone else's property. Consequently, Kasper had "better title" to the fuel than did Praegitzer, and whatever title Praegitzer passed to Curtright was inferior to Kasper's title.

That conclusion is consistent with other cases as well. In *Plummer v. Kingsley*, 190 Or 378, 390, 226 P2d 297 (1951), the court explained that

> "[t]he fact that an owner has merely entrusted someone with possession and control of a chattel is not sufficient to estop him from asserting title against one who has purchased from the possessor in reliance on the apparent ownership of the possessor."

*See also South Seattle Auto Auction, Inc. v. Ladd*, 230 Or 350, 362, 370 P2d 630 (1962) ("[M]erely entrusting another with the possession or control of property is not sufficient to estop

the true owner from asserting title against one who has purchased from the possessor in reliance upon the latter's apparent ownership."). Applying that rule to these facts also leads to the conclusion that Kasper retained his superior title to the jet fuel, notwithstanding Curtright's good-faith purchase of the hangar and fuel tank from Praegitzer.

For those reasons, we conclude that Kasper was entitled to prevail as a matter of law on his conversion claim against Curtright. The trial court erred in granting Curtright's motion for summary judgment on that claim and in denying Kasper's motion for summary judgment.

Judgment on defendants' counterclaim affirmed; judgment on third-party claim reversed; otherwise affirmed.