Argued and submitted July 29, reversed and remanded for further proceedings
December 21, 2005

Leslie G. BUSCH,
Personal Representative of the Estate of
Inez T. Phillippe;
and Gerald A. Phillippe,
*Plaintiffs,*
*and*

Gloria ZALOKAR,
Personal Representative of the Estate of
Inez T. Phillippe,
*Appellant,*

*v.*

FARMINGTON CENTERS BEAVERTON,
an Oregon limited liability partnership;
Farmington Centers, Inc.,
an Oregon corporation,
dba Farmington Square;
and Brazelton Adult Foster Care, Inc.,
an Oregon corporation,
*Respondents.*

0103-03112; A123403

124 P3d 1282

Dennis H. Elliott argued the cause for appellant. With him on the briefs was Elliott & Park.

Thomas W. Brown argued the cause for respondents Farmington Centers Beaverton and Farmington Centers, Inc. With him on the brief were David C. Ferro and Cosgrave Vergeer Kester LLP, and Todd S. Baran and Todd S. Baran, P.C., for respondent Brazelton Adult Foster Care, Inc.

Before Edmonds, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

This is a wrongful death action brought by the personal representative of decedent's estate against two nursing care homes. The defendant nursing care homes, by way of affirmative defense, pleaded that the estate had previously settled its claims against them. Defendants further pleaded, by way of a counterclaim, that the former personal representative had breached his good faith duty under the settlement agreement to pursue probate court approval of it. On the parties' cross-motions for summary judgment, the trial court determined that defendants were entitled to prevail on both the affirmative defense of prior settlement and the counterclaim for breach of that settlement as a matter of law. The trial court therefore entered judgments dismissing the action as to each defendant. Plaintiff, the new personal representative, appeals, assigning error to the trial court's rulings on the cross-motions for summary judgment. Plaintiff also assigns error to the trial court's denial of plaintiff's motion to amend the complaint to allege punitive damages. As we explain below, we reverse and remand.

When, as here, the facts are not in dispute, we review rulings on cross-motions for summary judgment to determine whether either party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *Cochran v. Connell*, 53 Or App 933, 939, 632 P2d 1385, *rev den*, 292 Or 109 (1981). The facts pertinent to this appeal are as follows.

Plaintiff's decedent, an elderly Alzheimer's patient, died shortly after suffering injuries at two nursing care homes operated by defendants. Her first injuries were incurred at defendant Farmington Square, allegedly as a result of a beating by a fellow patient.[1] Decedent's family then moved her to defendant Brazelton Adult Foster Care where, soon after the move, she fell and suffered a fracture. She died shortly afterwards.

---

[1] There were no witnesses to what happened at defendant Farmington Square, but Farmington Square employees believed that it was likely that a fellow patient, who had a history of violent behavior toward some of the other patients in Farmington Square's care unit, may have assaulted decedent with a cane.

Decedent was survived by her husband, Gerald Phillippe, her son, Leslie Busch, and her stepdaughter, Gloria Zalokar. Together, the three jointly hired an attorney to bring a wrongful death action against defendants. The retainer agreement specifically provided that there would be no settlement or discussion of settlement with adverse parties without Phillippe's, Busch's, and Zalokar's participation and consent.

Busch eventually was appointed personal representative of decedent's estate. Meanwhile, the attorney filed the wrongful death claim on behalf of the estate and a survivorship action on behalf of the family members (Phillippe, Busch, and Zalokar). Sometime afterwards, the trial court required the attorney to elect between the wrongful death and the survivorship actions. As a result, the attorney filed an amended complaint that dropped the survivorship action and, thus, eliminated Phillippe and Zalokar as plaintiffs in the action. The case proceeded as a wrongful death action only, with Busch, in his capacity as personal representative, the sole named plaintiff. Phillippe and Zalokar were not consulted and were not, at that time, aware of those procedural events.

Before trial began in the wrongful death action, the parties—*i.e.*, Busch and defendants—submitted to mediation. Zalokar and Phillippe became aware of the scheduled mediation and voiced their objections. Despite their objections, the mediation went forward and the parties to the wrongful death action entered into an agreement to settle the case for $160,000, subject to probate court approval as required by ORS 30.070.[2] Busch, through the attorney, then petitioned the probate court for the statutorily required approval, asserting that the settlement was in the best interest of the estate. Zalokar and Phillippe filed objections to the petition for approval, stating that the attorney had been retained by all three family members and had been proceeding with a conflict of interest because he had not consulted Zalokar and Phillippe during the settlement process. The initially retained attorney responded by resigning, and another

---

[2] We set out the statute and discuss it at greater length later in this opinion.

attorney undertook to represent Busch in his capacity as personal representative. Zalokar and Phillippe had separate counsel at that point. On the new attorney's advice, Busch filed a response to Zalokar's and Phillippe's objections in which Busch represented to the probate court that he no longer believed that the settlement was in the best interest of the estate, given the objections of the beneficiaries. Busch did not ask the probate court to take any particular action in approving or disapproving the settlement, however. Rather, Busch urged that "the court make its own determination." The probate court declined to approve the settlement.

Busch later resigned as personal representative, and the probate court appointed Zalokar to replace him. The wrongful death action proceeded to trial, with Zalokar substituted as plaintiff. As noted, defendants filed answers to the amended complaint in which they asserted as an affirmative defense that the wrongful death action had been settled. They also asserted a counterclaim alleging that the settlement gave rise to a good faith duty on Busch's part to seek probate court approval and that Busch had breached that duty. Plaintiff moved for partial summary judgment in her favor on defendants' affirmative defense alleging settlement and their breach of contract counterclaim. Defendants responded by filing cross-motions for summary judgment in their favor on the same affirmative defense and counterclaim. The trial court denied plaintiff's motion and granted defendants' motion, entering judgment for defendants.

On appeal, plaintiff challenges the rulings on the cross-motions for summary judgment. The parties renew the arguments that they made to the trial court. Plaintiff argues that, because the settlement was conditioned on probate court approval, which the probate court never gave, the settlement did not become a legally enforceable agreement. As a result, there could be no breach of any duty of good faith arising under the agreement for Busch to pursue probate court approval. Defendants, in response, maintain that probate court approval was not necessary for formation of a binding settlement agreement between Busch and defendants. Instead, according to defendants, a legally binding contract

came into existence when the parties agreed to the settlement, the full performance of which was contingent on probate court approval. Defendants further assert that, once a legally enforceable agreement existed, Busch was obligated to use "reasonable diligence" to ensure that the condition of probate court approval did not fail, and Busch did not do so. Plaintiff replies that, when, as here, court approval of an agreement is required by statute, rather than by the voluntary choice of the parties, the court approval must be obtained before the agreement will be legally binding.[3]

In support of their respective positions, the parties analogize to cases, from both Oregon and other jurisdictions, that they believe support their view of the legal effect of an agreement subject to a condition precedent, such as court approval. We conclude, however, that the analysis does not turn on general principles of contract formation. Rather, it is controlled by ORS 30.070, the statute that requires probate court approval of the settlement of a wrongful death action.

ORS 30.070 provides, in part:

"The personal representative of the decedent, with the approval of the court of appointment, shall have full power to compromise and settle any claim of the class described in ORS 30.030, whether the claim is reduced to judgment or not, and to execute such releases and other instruments as may be necessary to satisfy and discharge the claim."

The cross-referenced statute, ORS 30.030, governs distribution of damages in wrongful death claims brought by the personal representative of the decedent. Thus, ORS 30.070 controls when and under what circumstances a personal representative can compromise and settle a wrongful death claim. In that regard, ORS 30.070 does not merely state that a settlement of a wrongful death action is subject to probate court approval. Rather, and more precisely, it declares that a

---

[3] Plaintiff also makes other arguments. For example, plaintiff argues that defendants' affirmative defense and counterclaim constituted improper "collateral attacks" on the probate court's order disapproving the settlement. Plaintiff also argues that, even if the settlement were a legally enforceable agreement, Busch's conduct would not have breached any good faith duty that arose implicitly from the settlement and that, in all events, the probate court was obligated to disapprove the settlement because of the conflict of interest that Knox had when he negotiated it. Our analysis makes it unnecessary to reach those or plaintiff's other arguments.

personal representative has full "power" to compromise or settle a claim only "with the approval of" the probate court. The terms that the legislature chose are significant to our analysis here. As a matter of plain text, ORS 30.070 limits a personal representative's *power* to compromise and settle a wrongful death claim by making that power conditional on probate court approval. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (legislature's intent should be determined, first, from text and context).

As the Supreme Court has observed, the legislative choice in ORS 30.070 to condition a personal representative's settlement authority on court approval is an uncharacteristic one. The probate statutes generally grant personal representatives broad authority to otherwise deal with the property and claims of an estate without court approval.[4] ORS 30.070, however, reflects an explicit legislative choice *not* to give personal representatives "unfettered authority to settle wrongful death claims" and to instead condition that authority on probate court approval. *Hughes v. White*, 289 Or 13, 17, 609 P2d 365 (1980). The probate court's role in approving any settlement agreement as a condition of a personal representative's authority to enter into that agreement serves an important role in protecting the interests of beneficiaries, who have no legal ability to approve or disapprove a settlement of the wrongful death action. In other words, the probate court's approval of the settlement serves as a check on the personal representative's power to enter into a settlement without the participation of the beneficiaries. *See id.* at 16-18, 19 n 6 (describing the probate court's role in approving settlement and observing, by way of footnote, that the probate court can appropriately consider the best interests of all of the beneficiaries in determining whether to approve settlement for beneficiaries who otherwise have no say in the decision).

ORS 30.070 provides a complete answer to the question of the legal effect of the agreement negotiated between Busch and defendants to settle the wrongful death claim, which was expressly conditioned on probate approval as required by the statute. Under ORS 30.070, court approval of

---

[4] *See, e.g.*, ORS 114.275; ORS 114.305; ORS 114.325.

the settlement was not just a condition precedent to full performance of the agreement. Rather, it was a condition precedent to Busch's very *power* to settle the wrongful death action in his capacity as personal representative.[5] Without that power, no legally binding settlement arose. Accordingly, the probate court's disapproval of the settlement meant that no legally binding agreement came into existence.

For that reason, plaintiff, not defendants, was entitled to prevail on the cross-motions for summary judgment. In particular, plaintiff was entitled to prevail as a matter of law on defendants' affirmative defense of settlement, because the settlement agreement was not legally binding without probate court approval. That conclusion, in turn, means that plaintiff was entitled to prevail as a matter of law on defendants' counterclaim for breach of the settlement agreement. Without a legally binding settlement agreement, no implied covenant arose that imposed a duty on Busch to exercise good faith in pursuing probate court approval of the settlement. Consequently, the trial court erred in granting summary judgment in favor of defendants and in denying partial summary judgment in favor of plaintiff.

We therefore turn to plaintiff's final assignment of error, which challenges the trial court's denial of plaintiff's motion for leave to amend the complaint to allege punitive damages against defendant Farmington. *See* ORS 31.725.[6] On the record before us, however, we decline to resolve whether the trial court's ruling was correct. In opposing plaintiff's motion to allege punitive damages, defendants raised several specific objections to the evidence on which plaintiff relied. On appeal, defendants acknowledge that the trial court did not expressly rule on those objections. Because

---

[5] Of course, any settlement had to be by Busch in his capacity as personal representative, because only the personal representative of an estate may bring a wrongful death action and settle it. ORS 30.020; ORS 30.030.

[6] ORS 31.725(2) provides:

"At the time of filing a pleading with the court, the pleading may not contain a request for an award of punitive damages. At any time after the pleading is filed, a party may move the court to allow the party to amend the pleading to assert a claim for punitive damages. The party making the motion may submit affidavits and documentation supporting the claim for punitive damages. The party or parties opposing the motion may submit opposing affidavits and documentation."

the trial court did not do so, we cannot determine with confidence what evidence the trial court considered properly before it for purposes of testing the adequacy of the allegations that plaintiff sought to add to its complaint.

In addition, in denying the motion, the trial court expressly invited plaintiff to renew the motion if plaintiff could produce additional evidence to support it. Plaintiff later filed a second motion to amend her complaint to allege punitive damages and, in doing so, supplemented the evidence in support of that motion. The trial court never ruled on that motion, apparently because its ruling on the cross-motions for summary judgment preempted any need to do so.[7]

Thus, as the record stands, we have no express ruling on the evidentiary objections that defendants made to some of the evidence that plaintiff submitted in support of the original motion to amend the complaint to allege punitive damages. Nor do we have a ruling on plaintiff's second such motion, which purported to place additional evidence before the court in support of the motion. We therefore commit the issue to the trial court's further consideration on remand.

Reversed and remanded for further proceedings.

---

[7] In the order granting summary judgment in favor of defendants, the trial court observed that "plaintiff's motion to file a second amended complaint is moot because of the court's other rulings." Our review of the record suggests that the court was referring to a different motion to amend that was filed at about the same time as the cross-motions for summary judgment, not the second motion to amend to allege punitive damages. In all events, whether the trial court did so expressly or *de facto*, the trial court appears never to have ruled on the second motion to amend the complaint to allege punitive damages because no ruling was necessary given the disposition of the summary judgment motions.